**Jay LINDSAY, d/b/a Mac Advertising Company, et al., Plaintiffs-Appellees,**

v.

**The CITY OF SAN ANTONIO, Defendant-Appellant.**

No. 86–2744.

United States Court of Appeals, Fifth Circuit.

July 17, 1987.

Rehearing and Rehearing En Banc Denied Sept. 4, 1987.

Steven W. Arronge, Christine Chemell, Asst. City Attys., San Antonio, Tex., for defendant-appellant.

Michael F. Archer, Jorrie, Archer & Standley, Inc., San Antonio, Tex., for plaintiffs-appellees.

Before RANDALL, GARWOOD and DAVIS, Circuit Judges.

RANDALL, Circuit Judge:

Defendant, the City of San Antonio, appeals the district court's issuance of a preliminary injunction restraining the enforcement of a city ordinance that prohibits the future display or placement of portable signs. We reverse.

## I.

Plaintiffs, who are in the business of supplying, leasing, renting and selling portable signs [1] in San Antonio, Texas, brought suit to challenge the constitutionality of San Antonio City Ordinance 62652 ("the ordinance"), enacted on April 3, 1986. The ordinance amends article V of Chapter 28 of the City Code of San Antonio by adding the following section:

> Sec. 28–161 Prohibition of portable signs
>
> It shall be unlawful to intentionally place or display, or cause to be placed or displayed, any portable sign on any premises other than at a properly zoned storage area of one properly licensed under this chapter unless it has been registered in accordance with section 28–162.

San Antonio, Tx., City Code ch. 28, art. V, § 28–161 (Apr. 3, 1986). Section 28–162 awards nonconforming status to portable signs in place prior to September 22, 1985, if those signs are registered and main-

---

1. A portable sign is defined in the City Code as: any sign designed or constructed to be easily moved from one location to another, including signs mounted upon or designed to be mounted on a trailer, wheeled carriage, or other nonmotorized mobile structure. A portable sign which has its wheels removed shall still be considered a portable sign.

tained.[2] In the commentary accompanying the ordinance, the purposes underlying the ordinance are expressly set forth: "Prohibiting further placement of portable signs is desired because they are not consonant with aesthetic values of the community and because they present unique safety problems."[3] Commentary to San Antonio, Tx., City Code ch. 28, art. V, §§ 28–161 & 28–162 (Apr. 3, 1986).

In their complaint, plaintiffs alleged that the ordinance violates the first and fourteenth amendments of the Constitution, and is an impairment of contract rights in violation of article I, section 10, clause 1 of the Constitution. In conjunction with their original complaint, plaintiffs filed a motion for a preliminary injunction, requesting that the district court restrain the City from enforcing the ordinance pending a final determination of the merits of the action. Pursuant to 28 U.S.C. § 636(b)(1)(B), the motion was referred to a United States Magistrate for the purpose of having the magistrate conduct an evidentiary hearing. After the hearing, the magistrate submitted to the district court proposed findings of fact and conclusions of law and a recommendation for disposition of the motion. The magistrate found that plaintiffs had satisfied the prerequisites to the issuance of a preliminary injunction and recommended that the motion for preliminary injunction be granted. The City filed objections to certain findings and conclusions. On August 13, 1986, after conducting a *de novo* review of the record, the district court issued a preliminary injunction prohibiting the enforcement of the ordinance. This appeal followed.

## II.

The district court issued a memorandum opinion in which it concluded that the plaintiffs were entitled to a preliminary injunction, having satisfied the four prerequisites for such relief: (1) substantial likelihood that the moving party will ultimately succeed on the merits; (2) irreparable harm if the injunction is not issued; (3) the threatened harm to the moving party will outweigh any potential injury the injunction may cause the non-movant; and (4) the injunction will not disserve the public interest. *Lindsay v. City of San Antonio*, No. SA–86–CA–636 (W.D.Tex. Aug. 13, 1986) (memorandum opinion) at 6 [hereinafter cited as "Memorandum Opinion"] (citing *Star Satellite, Inc. v. City of Biloxi*, 779 F.2d 1074, 1079 (5th Cir.1986); *Canal Auth. v. Callaway*, 489 F.2d 567, 572 (5th Cir.1974)).

The court focused its attention on the question of whether the plaintiffs were likely to prevail on the merits and found that success on the merits was likely. The court viewed the ordinance, which it found to "effectively impose[ ] an absolute ban on portable signs,"[4] Memorandum Opinion at 7, as a "content neutral" ordinance, affecting commercial and non-commercial speech equally. The court then identified the proper standard for reviewing such a content-neutral regulation as that set forth in *Members of the City Council v. Taxpayers for Vincent*, 466 U.S. 789, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984):

> ing or egressing from a place of business. Portable signs also have a tendency to be blown about in strong winds. Portable signs with electrical connections and components, if improperly maintained, pose a serious public safety hazard. Therefore, use of portable signs must conform to regulations for on-premise signage as set out in Article IV, Division 1 of this chapter. Commentary to San Antonio, Tx., City Code ch. 28, art. V, §§ 28–161 & 28–162 (Apr. 3, 1986).

San Antonio, Tx., City Code ch. 28, § 28–6.

**2.** On September 22, 1985, a moratorium had gone into effect prohibiting future placement of portable signs until such time as a permanent sign ordinance was passed.

**3.** The commentary continues, in part:

Lightweight design and easy mobility of portable signs together with frequent use of electrical components create a potential for extraordinary safety hazards. Portable signs are often placed in close proximity to public rights-of-way in order to optimally attract the attention of motorists. Such placement creates visual obstruction of oncoming pedestrian and vehicular traffic for motorists ingress-

**4.** The court also found that alternative channels for communication exist. *See* Memorandum Opinion at 9. The significance of the availability of alternative channels for communication is discussed *infra* at Part III.

"[A] government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest."

*Id.* at 805, 104 S.Ct. at 2128–29 (quoting *United States v. O'Brien,* 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968)).[5] Finding the asserted interests behind the ordinance—aesthetics and safety—to be "important" governmental interests, in furtherance of which there was little doubt that the City may exercise its police powers, the court concluded that the crucial issues to be addressed were whether the ordinance in fact furthers the City's interests and whether the scope of the restriction on the plaintiffs' expressive activity is "substantially broader than necessary to protect those interests." Considering those questions, the court determined that the problems with the ordinance were "its failure to accomplish its aesthetic purpose and its overly broad application." Memorandum Opinion at 9.

The court found that the photographs introduced into evidence by the plaintiffs "indicate that the aesthetic appearance of the City will imperceptibly change, at best, if portable signs are eliminated since portable signs appear to represent a small frac-

tion of the total number of sign advertisements." *Id.* The court found that the City had not shown that the ordinance furthers its aesthetic interests. The court went on to say that, even if the City had made that showing, the City could, according to certain testimony, control aesthetics by passing a less restrictive ordinance limiting the number of signs per commercial establishment. Further, the court noted its belief that "if the City were truly concerned with the effect of portable signs, it would not have created the grandfather clause allowing some signs to remain in place." *Id.* at 10.

With respect to the asserted interest in traffic safety, the court found that the testimony adduced at the evidentiary hearing substantiated the traffic concerns. However, the court also found that the evidence established that the City's goals could be accomplished by means less severe than a total ban. Indeed, the court found that all of the City's concerns could be addressed by an ordinance imposing a regulation less drastic than a total ban. According to the court, the record contains substantial evidence of more "narrowly tailored" means to achieve both traffic safety and aesthetics.

Therefore, based on the reasoning discussed above, the court concluded that the plaintiffs had shown a likelihood of success on the merits.[6] The court summarized:

*Metromedia,* 453 U.S. at 507, 101 S.Ct. at 2892 (plurality) (citing *Central Hudson,* 447 U.S. at 563–66, 100 S.Ct. at 3350–51). The district court stated that because the instant case involves both commercial and non-commercial speech, the *Vincent* analysis was appropriate. However, the court noted that, "[i]n any case, the second, third and fourth elements of the *Central Hudson* test are subsumed within *Vincent.* The expression at issue here was neither unlawful nor misleading, thus the first *Central Hudson* element is satisfied. Since both *Central Hudson* and *Vincent* require that the challenged law be no broader than necessary, it is clear that the San Antonio ordinance fails both tests." Memorandum Opinion at 16–17.

---

5. The court noted that the Eleventh Circuit, in *Harnish v. Manatee County,* 783 F.2d 1535 (11th Cir.1986), in sustaining an absolute ban of portable signs, applied the four-part test of *Metromedia, Inc. v. City of San Diego,* 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981), as originally set forth in *Central Hudson Gas & Elec. Corp. v. Public Service Comm'n,* 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980), for determining the validity of government restrictions on commercial speech:

 (1) The First Amendment protects commercial speech only if that speech concerns lawful activity and is not misleading. A restriction on otherwise protected commercial speech is valid only if it (2) seeks to implement a substantial government interest, (3) directly advances that interest, and (4) reaches no further than necessary to accomplish the given objective.

6. The court went on to note that the plaintiffs had also satisfied the three remaining prerequisites to the issuance of a preliminary injunction.

While traffic safety and aesthetics are legitimate governmental concerns, the ordinance furthers the former but not the latter. The evidence clearly showed that a total ban is completely unnecessary and unwarranted. The City can avoid traffic and other public safety problems related to portable signs by regulations concerning placement, construction and maintenance. Aesthetic appearance of the signs can also be regulated. The City ordinance, as now written, violates freedom of speech.

Memorandum Opinion at 17. Therefore, the court issued a preliminary injunction prohibiting the enforcement of the ordinance.

On appeal, the City raises two points of error. The first point of error appears to be an attack on the district court's finding that the City had not shown a substantial reason for prohibiting the future placement of portable signs (i.e., that the ordinance would have only an "imperceptible" effect).[7] In this regard, the City argues that this court's decision in *Dunagin v. City of Oxford*, 718 F.2d 738 (5th Cir.1983) (en banc), *cert. denied*, 467 U.S. 1259, 104 S.Ct. 3553, 82 L.Ed.2d 855 (1984), dictates that we give the record *de novo* review because the case raises a first amendment question.

The City's second point of error is a more general attack on the district court's determination that the plaintiffs were likely to succeed on the merits because the ordinance violates the first amendment. The City argues that the City Council has stated its legitimate reasons for the content-neutral prohibition embodied in the ordinance and has demonstrated them to the district court. The City notes that the Supreme Court has recognized that a content-neutral regulation does not, on review, warrant the same strictness of scrutiny that a content-based restriction warrants. Therefore, according to the City, since the ordinance does not abridge first amend-

ment rights, the preliminary injunction should be dissolved.

Implicit in the City's contentions on appeal must be the argument that the district court's issuance of a preliminary injunction constitutes an abuse of that court's discretion. The grant or denial of a preliminary injunction is committed to the discretion of the district court and will be upheld absent an abuse of discretion. *See, e.g., Dallas Cowboys Cheerleaders, Inc. v. Scoreboard Posters, Inc.*, 600 F.2d 1184, 1187 (5th Cir. 1979); *Di Giorgio v. Causey*, 488 F.2d 527, 528–29 (5th Cir.1973). While the decision to grant or deny a preliminary injunction is left to the discretion of the trial court, the exercise of that discretion is not unbridled. *See Canal Authority*, 489 F.2d at 572. Rather, it must be exercised in light of the four "prerequisites" for preliminary injunctive relief recognized by this circuit:

(1) a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and (4) that granting the preliminary injunction will not disserve the public interest.

*Id.; see also Vision Center v. Opticks, Inc.*, 596 F.2d 111, 114 (5th Cir.1979), *cert. denied*, 444 U.S. 1016, 100 S.Ct. 668, 62 L.Ed.2d 646 (1980). The four prerequisites to injunctive relief are mixed questions of law and fact. *Buchanan v. United States Postal Service*, 508 F.2d 259, 267 n. 24 (5th Cir.1975).

█ It is generally accepted that a district court's findings of fact made in connection with the grant or denial of a preliminary injunction will not be set aside unless clearly erroneous. *Id.* Where the standard of appellate review is the narrow "clearly erroneous" standard, the role of the appellate court is obviously quite limited. In the instant case, however, our role

---

**7.** The City phrases its first argument on appeal several different ways. At one point in its brief, the City argues that "[t]he Courts below erred in failing to rule upon whether or not portable signs are unattractive since evidence was presented on this issue for ruling." Brief of

Appellant at 5. However, in its "conclusion" to its first argument, the City states, "[t]he Court erred in not ruling that the City of San Antonio had shown a substantial reason for prohibiting the future placement of portable signs on aesthetic grounds." *Id.* at 7.

as the reviewing court is not so limited. As this court noted in *Dunagin*, in deciding whether restrictions on speech are justified, appellate courts do not rely heavily on findings of fact made by trial courts. *Dunagin*, 718 F.2d at 748–49 n. 8. We stated:

> the Supreme Court's recent commercial speech and other relevant speech cases indicate that appellate courts have considerable leeway in deciding whether restrictions on speech are justified. In none of them did the Court rely heavily on fact findings of the trial court.

*Id.* at 749 n. 8.[8] This statement is in line with the Supreme Court's notation in a libel case, *Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984) that, "in cases raising First Amendment issues we have repeatedly held that an appellate court has an obligation to 'make an independent examination of the whole record.'" *Id.* at 499, 104 S.Ct. at 1958 (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 285, 84 S.Ct. 710, 729, 11 L.Ed.2d 686 (1964)).

The view expressed in *Dunagin* seems consistent also with the Supreme Court's most recent statement regarding the scope of appellate review in first amendment cases. In *Rankin v. McPherson*, — U.S. —, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987), the Court considered the issue of whether a clerical employee in a county constable's office was properly discharged for engaging in speech, specifically, for remarking, after hearing of an attempt on the life of the President, "If they go for him again, I hope they get him." *See id.* 107 S.Ct. at 2895.

The district court in *McPherson* had ruled that the plaintiff's remark was not protected speech. On appeal, this court reversed. *McPherson v. Rankin*, 786 F.2d 1233 (5th Cir.1986), *aff'd*, 107 S.Ct. 2891, (1987). We held that the plaintiff's remark had addressed a matter of public concern, requiring that society's interest in the plaintiff's freedom of speech be weighed against her employer's interest in maintaining efficiency and discipline in the workplace. Performing that balancing, we concluded that the government's interest did not outweigh the first amendment interest in protecting plaintiff's speech. In its opinion affirming the decision reached by this court, a majority of the Supreme Court wrote that "any factual findings subsumed in the 'public concern' determination are subject to constitutional fact review." *McPherson*, 107 S.Ct. at 2899. In conjunction with that proposition, the Court cited this court's opinion in the case, 786 F.2d at 1237,[9] as well as the Supreme Court's opinion in *Bose*.

### III.

■ It is well-established that, as the district court found, the state may legit-

**8.** By way of example, we mentioned that, "[i]n *Metromedia*, despite assertions that 'the record is inadequate to show any connection between billboards and traffic safety' the judgment of the Court agreed with the 'common-sense' belief of local lawmakers and other courts that billboards do pose substantial traffic safety hazards." *Dunagin*, 718 F.2d at 749 n. 8 (citing *Metromedia*, 453 U.S. at 508–09, 101 S.Ct. at 2893 (plurality)).

In *Dunagin*, we also commented that "the decision on whether a regulation of commercial speech directly advances the state's interest, for example, is an exercise of constitutional adjudication wherein appellate courts play a special role." 718 F.2d at 748 n. 8.

**9.** In our opinion, authored by Judge Higginbotham, in the context of discussing "[t]he precise fit of the clearly erroneous standard of review and our duty to make 'an independent constitutional judgment on the facts of the case,'" 786 F.2d at 1237 (quoting *Connick v.*

*Myers*, 461 U.S. 138, 150 n. 10, 103 S.Ct. 1684, 1692 n. 10, 75 L.Ed.2d 708 (1983)), we noted that:

> [W]hen what was said and its context are undisputed, the constitutional "status" of the speech is to be independently examined by an appellate court. When what was said, but not its context, is disputed, the choice belongs to the trier of fact; on appeal, the determination of what was said is subject to review by the clearly erroneous standard, and the constitutional "status" of the statement is given independent review. Yet, when a factual dispute centers not on what was said but on its context, the deference due a trial court's findings becomes less certain: factual conclusions about the speaker's intent, audience effect, and other elements of context are not so easily disentangled from a decision as to whether a statement was "political" or directed at "public concerns."

*McPherson*, 786 F.2d at 1237.

imately exercise its police powers to advance the substantial governmental goals of aesthetics and traffic safety, *see, e.g., Vincent,* 466 U.S. at 805, 104 S.Ct. at 2129; *Metromedia, Inc. v. City of San Diego,* 453 U.S. 490, 507–08, 101 S.Ct. 2882, 2892–93, 69 L.Ed.2d 800 (1981) (plurality), and thus, it is clearly within the constitutional power of the City to attempt to improve the appearance of San Antonio and to improve traffic safety. It is also undisputed that those interests are basically unrelated to the suppression of ideas. Thus, the critical inquiries are, as the district court stated, whether the ordinance does further the City's interests and whether the restriction on speech is greater than is essential to the furtherance of those interests.

We believe that the district court's critical finding that the ordinance would not further the City's aesthetic interest cannot stand. As an initial matter, we note our concern about the approach taken by the district court in making its determination that the ordinance does not "further" the governmental interest in aesthetics. The district court found that photographs introduced into evidence by the plaintiffs "indicate that the aesthetic appearance of the City will *imperceptibly* change, at best, if portable signs are eliminated since portable signs appear to represent a small fraction of the total number of sign advertisements." Memorandum Opinion at 9 (emphasis added). Such a finding by a trial court raises several concerns. First, it is unclear what factors should, and do, inform a court's decision as to whether an effect on a governmental interest is "imperceptible." The limits on such a determination seem boundless. In a related vein, when a trial court makes such a finding, the potential for the court to substitute its own judgment about aesthetics for that of the body charged with making aesthetic determinations is great. Left open is the possibility that the trial court will decide that nothing short of full achievement—as opposed to "furtherance"—of a governmental

purpose is sufficient to justify a particular restriction on speech. Indeed, in the instant case, notwithstanding protestations by the court to the contrary,[10] the court's general description of the problem with the ordinance—"its failure to accomplish its aesthetic purpose"—suggests that the district court took such an approach to the question raised under *Vincent* of whether the regulation "furthers an important or substantial governmental interest." *Vincent,* 466 U.S. at 805, 104 S.Ct. at 2128 (quoting *United States v. O'Brien,* 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968)). It seems that the district court may have been holding the City to a standard requiring it to cure all visual blight, or none at all.

■ Such an approach seems to be at odds with the principle that the district court itself recognized—that the elimination of all visual blight is not the constitutional prerequisite to an ordinance regulating a type of signage. The case law makes clear that a city is not precluded from curing only some of its visual blight, *see, e.g., Vincent,* 466 U.S. at 811, 104 S.Ct. at 2132 ("Even if some visual blight remains, a partial, content-neutral ban may nevertheless enhance the City's appearance."), or from pursuing the elimination of visual blight in a piecemeal fashion. *See, e.g., Metromedia,* 453 U.S. at 531–32, 101 S.Ct. at 2904–05 (Brennan, J., concurring in the judgment).

While we are troubled by the implications of the district court's approach, we recognize that the Supreme Court's opinion in *Vincent* suggests that district courts can, in fact, determine that, because of the large number of signs in a particular area, an ordinance banning a type of signage will have only an inconsequential effect, and thus, that the ordinance does not "further" the interest in aesthetics. In the course of upholding an ordinance that prohibited the posting of signs on public property, the Court noted:

permanent signs. Even if this is true the City is not precluded from curing only some of its visual blight and traffic problems." Memorandum Opinion at 9.

**10.** The court noted that, "Plaintiffs introduced photographs indicating that portable signs are no more of a traffic hazard and no more aesthetically displeasing that [sic] are many pole and

[T]here is no finding that in any area where appellees seek to place signs, there are already so many signs posted on adjacent private property that the elimination of appellees' signs would have an inconsequential effect on the esthetic values with which the City is concerned. There is simply no predicate in the findings of the District Court for the conclusion that the prohibition against the posting of appellees' signs fails to advance the City's esthetic interest.

*Vincent,* 466 U.S. at 811–12, 104 S.Ct. at 2132. Therefore, it seems that the Court is implicitly recognizing that such a finding of "inconsequential effect" could support the conclusion that the ordinance does not further the governmental interest under the *Vincent* test.

■ In the instant case, the district court undoubtedly focused in on the above-quoted language from *Vincent* since its finding that the ordinance would imperceptibly change the aesthetic appearance of the City closely tracks the words of *Vincent.* While we assume, on the basis of *Vincent,* that the district court can make such a finding and that a finding of "inconsequential effect" can support the conclusion that an ordinance does not further the aesthetic interest, we also believe that this court, on review, is not bound by that finding.[11] *See McPherson,* 107 S.Ct. at 2896; *Bose,* 466 U.S. at 499, 104 S.Ct. at 1958–59; *Dunagin,* 718 F.2d at 748–49 n. 8.

■ We have carefully reviewed the record in this case. The record consists of more than 25 photographs submitted by the plaintiffs, approximately 15 photographs submitted by the City, copies of various San Antonio city ordinances regulating signage, and a transcript of the testimony adduced at the evidentiary hearing. Our review of the evidence would lead us to conclude, contrary to the result reached by the district court, that the record demonstrates that the ordinance does, in fact, further the City's aesthetic interest. However, even assuming that our view of the

record is not persuasive, the best that can be said of the record evidence is that it is inconclusive. The photographs submitted by the City are simply pictures of portable signs, seemingly introduced into evidence to depict what we take to be relatively obvious—that the portable signs are unsightly. *Cf. Harnish v. Manatee County,* 783 F.2d 1535, 1539 n. 4 (11th Cir.1986) (Eleventh Circuit commented that "[a]n examination of the forty-nine photographs of portable and changeable copy signs appearing in the record confirms an unsightly visual cluster."). The photographs submitted by the plaintiffs, showing the many varieties of signage that populate San Antonio, were apparently collected and submitted for the purpose of establishing that San Antonio has a great many non-portable signs which serve to create visual blight. The testimony is similarly inconclusive, with various witnesses testifying that portable signs are unaesthetic (some saying that portable signs are less aesthetically pleasing than other types of signs) and with testimony from some of those witnesses that restrictions short of a total ban would serve to make portable signs less unsightly—i.e., no more unsightly than other signs.

When the evidence is weighed taking into account the need to accord deference to the judgment of the body charged with the responsibility of making determinations about aesthetics, *cf. Clark v. Community for Creative Non-Violence,* 468 U.S. 288, 299, 104 S.Ct. 3065, 3072, 82 L.Ed.2d 221 (1984); *Metromedia,* 453 U.S. at 509, 101 S.Ct. at 2893 (plurality); *Harnish,* 738 F.2d at 1539; *Dunagin,* 718 F.2d at 748 n. 8, and with care not to substitute the judgment of a court for the judgment of that body, the balance tips in favor of the finding that the ordinance does further the City's aesthetic interest.

We turn now to the district court's finding that there is substantial evidence that more narrowly tailored means exist to achieve both traffic safety and aesthetics. For purposes of this opinion, we can as-

11. Under the reasoning employed in this court's decision in *McPherson, see supra* at note 8, we believe that this finding is one for which independent review is appropriate.

sume, *arguendo,* that the traffic safety interest could be furthered by means of a more narrowly tailored ordinance. *Cf. Harnish,* 738 F.2d at 1540 ("Since we hold that on this record the prohibition of portable signs to eliminate the aesthetic blight passed muster under the First Amendment, we have no occasion to address the holding of the district court that less restrictive means would accomplish the safety objective."). Therefore, we consider only the court's finding that more narrowly tailored means exist to achieve the City's aesthetic interest.

■ For guidance in approaching this question, we look to the reasoning employed by the Supreme Court in *Vincent* in making its determination of whether the scope of the restriction on the posting of signs on public property was "substantially broader than necessary to protect the City's interest in eliminating visual clutter." *Vincent,* 466 U.S. at 808, 104 S.Ct. at 2130. The Court found that, by banning the signs, "the City did no more than eliminate the exact source of the evil it sought to remedy." *Id.* at 808, 104 S.Ct. at 2130 (footnote omitted).[12] In justifying its conclusion with regard to the case before it, the *Vincent* Court noted that "[t]he plurality wrote in *Metromedia:* 'It is not speculative to recognize that billboards by their very nature, wherever located and however constructed, can be perceived as an "esthetic harm." ' ... The same is true of posted signs." *Id.* at 808, 104 S.Ct. at 2131.[13] We believe that this reasoning applies with equal force in the instant case. The ban on portable signs is not "substantially broader

than necessary" to protect the City's aesthetic interest.

■ Finally, we recognize that "[w]hile the First Amendment does not guarantee the right to employ every conceivable method of communication at all times and in all places ... a restriction on expressive activity may be invalid if the remaining modes of communication are inadequate." *Vincent,* 466 U.S. at 812, 104 S.Ct. at 2132 (citations omitted). In the instant case, there are ample methods of communication that are available as alternatives to portable signs.[14] Notwithstanding plaintiffs' suggestions that portable signs have special qualities (low cost, capability of having their messages changed frequently), nothing in the findings of the district court or in the record indicates that portable signs are a uniquely valuable or important mode of communication or that plaintiffs' ability to effectively communicate is threatened by ever-increasing restrictions on speech. *Cf. id.* Indeed, addressing the question of whether alternative channels for communication exist, the district court found that "[t]he evidence establishes that plaintiffs could engage in other types of sign businesses and that other modes of advertising are available to persons now using portable signs." Memorandum Opinion at 9.[15]

■ Therefore, for the reasons outlined above, we believe that the district court abused its discretion in granting the plaintiffs' motion for a preliminary injunction since we disagree with the court's conclusion that plaintiffs have demonstrated a likelihood of success on the merits.

12. The Court noted that, in *Metromedia,* a majority of the Court had concluded that a prohibition on billboards was narrowly tailored to the visual evil that the City of San Diego sought to correct. *Vincent,* 466 U.S. at 808 n. 27, 104 S.Ct. at 2130 n. 27.

13. The Court did note that "[t]he District Court found that the signs prohibited by the ordinance do constitute visual clutter and blight." *Vincent,* 466 U.S. at 808, 104 S.Ct. at 2130. However, on the basis of the quoted reference to *Metromedia,* it seems that the Court was willing to decide, for itself, that posted signs were "esthetically harmful." Therefore, the district court's finding of that fact was not dispositive.

14. As the Court in *Vincent* noted, "[a]lthough the Court has shown special solicitude for forms of expression that are much less expensive than feasible alternatives and hence may be important to a large segment of the citizenry ... this solicitude has practical boundaries." *Vincent,* 466 U.S. at 812–13 n. 30, 104 S.Ct. at 2133 n. 30 (citations omitted).

15. We note that the City has pointed out that "San Antonio has special exemptions to address political and other non-commercial speech within its sign ordinances." Brief of Appellant at 11.

### IV.

On the basis of the foregoing, the district court's order issuing a preliminary injunction is REVERSED.