DON'S PORTA SIGNS, INC., West Coast Sign Co. Ltd., Signs by Design of Florida, Inc., et al., Plaintiffs-Appellees,

v.

CITY OF CLEARWATER, Defendant-Appellant.

No. 86-3159.

United States Court of Appeals, Eleventh Circuit.

Oct. 13, 1987.

Alan S. Zimmet, Asst. City Atty., Clearwater, Fla., Charles L. Siemon, Siemon, Larson & Purdy, William W. Merrill, III, Sarasota, Fla., for defendant-appellant.

Donald E. Hemke, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, Tampa, Fla., for plaintiffs-appellees.

Before GODBOLD and ANDERSON, Circuit Judges, and SWYGERT*, Senior Circuit Judge.

SWYGERT, Senior Circuit Judge:

The City of Clearwater appeals from a judgment of the district court declaring the City's regulation of portable signs to be in violation of the first amendment and granting injunctive relief. We reverse.

I

The City of Clearwater is a resort community with several miles of beaches located on the west coast of Florida. Since the City relies heavily on tourism, preserving a visually attractive environment is of great importance to the community. On August 29, 1985, the City adopted a comprehensive Land Development Code which, among oth-

___

* Honorable Luther M. Swygert, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

er things, regulates the location, placement, erection, alteration, extension, installation and continuation of all signs. *See* City of Clearwater, Fla., Land Development Code ch. 134 (1985). Section 134.004 of the Code provides that the sign regulations are designed to:

3. Lessen hazardous situations, confusion and visual clutter caused by proliferation, improper placement, illumination, animation and excessive height, area and bulk of signs which compete for the attention of pedestrian and vehicular traffic.

4. Enhance the attractiveness and economic well-being of the City of Clearwater as a place to live, vacation, and conduct business.

*Id.* § 134.004(A)(3), (4).

The portion of the sign regulations pertaining to portable signs[1] states:

Portable Signs:

a. Not more than one (1) portable sign shall be placed on any property.

b. The sign and sign structure shall be positioned at least five (5) feet from all property lines.

c. The sign and sign structure shall not exceed six (6) feet in height in any residential zoning district or in the Limited Office District, and shall not exceed eight (8) feet in height in any other district.

d. Any portable sign with a height in excess of three (3) feet which is strategically placed with respect to a vehicular accessway shall require the approval of the Traffic Engineer in order to ensure that sufficient cross-visibility is afforded.

e. Portable signs shall be used only as temporary signs.

*Id.* § 134.012(A)(7). The plaintiffs-appellees, small businesses engaged in the leasing and renting of portable signs, and merchants who use portable signs to advertise, claim that the portable sign regulation amounts to a total ban.[2] The City does not dispute this characterization of the regulation. Shortly after the Land Development Code became effective, the plaintiffs challenged the section of the ordinance pertaining to portable signs on various constitutional grounds. On February 27, 1986, the district court granted the plaintiffs a permanent injunction and declared the portable sign regulation unconstitutional under the first amendment.[3]

In evaluating the plaintiffs' first amendment claims, the court applied the four-part commercial speech test set forth in *Central Hudson Gas & Electric Corp. v. Public Service Commission*, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980).[4] Under the *Central Hudson* test, (1) only commercial speech which concerns a lawful activity and is not misleading is protected under the first amendment. A restriction on protected commercial speech is valid if it (2) seeks to implement a substantial governmental interest, (3) directly advances that interest, and (4) reaches no further than necessary to accomplish the given objective. 447 U.S. at 566. The parties did not dispute that the speech at issue satisfied the first prong of the test, and the court readily conceded the substantiality of

---

1. A portable sign is defined as follows:
   A sign which is: (a) neither permanently anchored to the ground nor permanently affixed to a building or structure, or (b) mounted on a trailer chassis.
   City of Clearwater, Fla., Land Development Code § 137.005.

2. According to the complaint, the regulations effectively prohibit portable signs in three ways: (1) virtually none of the portable signs used in the City fall into the temporary use category; (2) most of the portable signs used in the City are larger than the specified size limitations; and (3) the sign regulations generally limit all properties to one permitted sign, and on most of the properties using portable signs the maximum number of signs have been erected as permanent signs.

3. The court also found the ordinance to be in violation of the equal protection clause, apparently because of the ordinance's disparate treatment of portable and permanent signs.

4. We note that the sign regulations contain exemptions for political and other non-commercial speech. *See* City of Clearwater, Fla., Land Development Code § 134.008.

the City's asserted interest in aesthetics.[5] However, the court concluded that the regulation did not directly advance the City's interest in aesthetics because the City had failed to establish that portable signs are any more unattractive than permanent signs, buildings, utility poles and wires, parking lots, or traffic congestion.[6] In addition, the court held that the City had not demonstrated that less intrusive restrictions would not serve the City's interests as well. This appeal followed.[7]

## II

On appeal, the City argues that the present case is controlled by this court's recent decision in *Harnish v. Manatee County*, 783 F.2d 1535 (11th Cir.1986). We agree. In *Harnish*, this court concluded, based upon the record before it, that a similar ban on portable signs satisfied the *Central Hudson* test. In so holding, the *Harnish* court emphasized that the governmental entity charged with the responsibility of making determinations about aesthetics must be given discretion in determining both the best method of achieving that goal and the degree of protection necessary. 783 F.2d at 1539.

In the present case, the City submitted evidence that portable signs are particularly unattractive and that their removal would enhance the visual quality of the community.[8] The district court nevertheless believed that the elimination of portable signs would not have a significant impact on aesthetics, and thus would not "directly advance" the governmental interest, because permanent signs and other visually unattractive structures would not also be immediately eliminated. As the Supreme Court observed in *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 511–12, 101 S.Ct. 2882, 2894–95, 69 L.Ed.2d 800 (1981) (plurality), however, a partial solution to a city's aesthetic problems may still directly advance the city's goals. The Constitution does not require the City to choose between curing all of its aesthetic problems or curing none at all. *See also Members of the City Council v. Taxpayers for Vincent*, 466 U.S. 789, 810–11, 104 S.Ct. 2118, 2131–32, 80 L.Ed.2d 772 (1984) (upholding a ban on the posting of signs on public property); *Supersign of Boca Raton, Inc. v. City of Fort Lauderdale*, 766 F.2d 1528, 1531 (11th Cir.1985) (upholding an ordinance prohibiting the operation of advertising vehicles and watercraft); *Lindsay v. City of San Antonio*, 821 F.2d 1103, 1110 (5th Cir.1987) (upholding a ban on portable signs). Moreover, the regulation of portable signs is but one aspect of the City's comprehensive effort to improve the City's appearance and should not be viewed in isolation. In light of these principles, as well as the deference to the City dictated by *Harnish*, we conclude that the record sufficiently supports the City's judgment that the regulation of portable signs will help to eliminate visual clutter and thereby further the City's interest in improving the visual character of the City.[9]

---

5. The City also attempted to justify the ordinance on the basis of traffic safety, but does not do so on appeal.

6. As the court pointed out, permanent signs are given an extended period of time to comply with the sign regulations. *See* City of Clearwater, Fla., Land Development Code § 134.015.

7. On the day that it granted the permanent injunction, the district court found the City in contempt for violating the court's earlier preliminary injunction. The City also appeals this contempt order. The imposition of sanctions, however, is a prerequisite for appellate review of a contempt order, *see SEC v. Naftalin*, 460 F.2d 471, 475 (8th Cir.1972), and there is nothing in the record indicating that the district court ever imposed sanctions. The appeal of the contempt order therefore is dismissed.

8. *See, e.g.*, Deposition of Michael Maxwell at 53–54, 66–68; Deposition of John Richter at 23–41. As in *Harnish*, there are also photographs of portable signs in the record "confirm[ing] an unsightly visual cluster." 783 F.2d at 1539 n. 4.

9. In cases involving first amendment claims, an appellate court must make an independent examination of the whole record. *Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485, 499, 104 S.Ct. 1949, 1958, 80 L.Ed.2d 502 (1984). We therefore agree with the Fifth Circuit's conclusion in *Lindsay*, 821 F.2d at 1107, that an appellate court is not bound by the "clearly erroneous" standard of review in determining whether a commercial speech regulation directly advances the government's goals or is more extensive than necessary. *See also Dunag-*

*Harnish* also compels us to conclude that the regulation is no more extensive than necessary to accomplish the City's goals. In *Harnish*, this court held that, in the absence of evidence in the record indicating that less restrictive means exist to achieve the government's aesthetic goals, a total ban on portable signs satisfied the fourth prong of the *Central Hudson* text. 783 F.2d at 1540. The plaintiffs in the present case suggest that the City's aesthetic goals could instead be accomplished by more stringent enforcement of the City's prior portable sign regulations, or by the elimination of portable signs in residential areas only. However, as the Supreme Court recognized in *Metromedia*, "[i]f the city has a sufficient basis for believing that billboards ... are unattractive, then obviously the most direct and perhaps the only effective approach to solving the problems they create is to prohibit them." 453 U.S. at 508, 101 S.Ct. at 2893. *See also Supersign,* 766 F.2d at 1532; *Lindsay,* 821 F.2d at 1111. Similar reasoning applies to the aesthetic problems caused by portable signs.[10]

The judgment of the district court is reversed.

---

*in v. City of Oxford,* 718 F.2d 738, 748 n. 8 (5th Cir.1983) (en banc), *cert. denied,* 467 U.S. 1259, 104 S.Ct. 3553, 82 L.Ed.2d 855 (1984).

**10.** Because the regulation passes muster under the *Central Hudson* test, the plaintiffs' claim that the regulation violates the equal protection clause by discriminating between types of signs fails as well. *See Posadas de Puerto Rico Assoc. v. Tourism Co.,* —— U.S. ——, 106 S.Ct. 2968, 2979 n. 9, 92 L.Ed.2d 266 (1986).