Lawrence H. DIMMITT, III and Dimmitt Chevrolet, Inc., a Florida corporation, Plaintiffs,

v.

The CITY OF CLEARWATER, a municipal corporation, and John D. Richter, individually and as Development Code Administrator of the City of Clearwater, Defendants.

No. 89–857–CIV–T–15A.

United States District Court,
M.D. Florida,
Tampa Division.

Nov. 12, 1991.

Joshua H. Magidson, for plaintiffs.

Milton Alvin Galbraith, for defendants.

## ORDER

CHARLES R. WILSON, United States Magistrate Judge.

THIS CAUSE is before the Court upon Plaintiffs' Motion for Partial Summary Judgment (doc. 31) and Defendants' Motion for Summary Judgment (doc. 21). The Court, having considered the motions, the memoranda and affidavits in support thereof, and being otherwise fully advised in the premises, finds that summary judgment should be entered on behalf of Plaintiffs and against Defendants for the reasons set forth below.

## STATEMENT OF THE CASE AND FACTS

This Court has jurisdiction pursuant to the Civil Rights Act, 42 U.S.C. § 1983, 28 U.S.C. § 1343, and the Declaratory Judgment Act, 28 U.S.C. § 2201. The parties have consented to resolution of this action by the undersigned Magistrate Judge. The Court adopts as its statement of facts paragraphs 1 through 21 of the Affidavit of John D. Richter (doc. 23), filed with the

Court on November 8, 1990, and paragraphs 1 through 13 of the Affidavit of Lawrence Dimmitt, III (doc. 29), filed with the Court on November 28, 1990. The facts the Court relies upon in these affidavits are either undisputed or unrefuted by record evidence.

Plaintiffs seek in this action 1) damages against Defendants resulting from Defendants' deprivation under color of law of Plaintiffs' rights under the First and Fourteenth Amendments of the Constitution of the United States; 2) declaratory relief as to whether § 134.008(18) of the City of Clearwater's Sign Regulations of Title XI, Land Development Code [1] (hereinafter referred to as "the ordinance" or "the Sign Code") is invalid and whether the Defendants' enforcement of the ordinance concerning Plaintiffs' flag display constitutes a denial of Plaintiffs' freedom of speech; and 3) injunctive relief in the event the Court determines that Plaintiffs' rights have been or are in danger of being violated.

Defendants have counterclaimed for declaratory and injunctive relief on a state law claim under the pendent or ancillary jurisdiction doctrine, claiming that the Plaintiffs' display of flags constitutes a violation of the ordinances of the City of Clearwater.

## STANDARD OF REVIEW

This circuit holds that summary judgment should only be entered when the moving party has sustained its burden of showing the absence of a genuine issue as to any material fact when all the evidence is viewed in the light most favorable to the non-moving party. *Sweat v. Miller Brewing Co.,* 708 F.2d 655 (11th Cir.1983). All doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Hayden v. First Nat'l Bank of Mt. Pleasant,* 595 F.2d 994, 996–97 (5th Cir.1979),[2] quoting *Gross v. Southern R.R. Co.,* 414 F.2d 292 (5th Cir.1969). Factual disputes preclude summary judgment.

The burden of establishing the absence of a genuine issue of material fact is on the moving party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once this burden is met, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. at 2553.

## DISCUSSION

The Court must first determine whether Plaintiffs' display of the flags constitutes expressive conduct. If so, plaintiffs may invoke the First Amendment to challenge the City's ordinance. *Texas v. Johnson,* 491 U.S. 397, 403, 109 S.Ct. 2533, 2538, 105 L.Ed.2d 342 (1989). If plaintiffs' conduct was expressive, the Court next decides if the City's ordinance is related to the suppression of free expression. *Id.* citing *Spence v. Washington,* 418 U.S. 405, 414, 94 S.Ct. 2727, 2732, 41 L.Ed.2d 842 (1974) and *United States v. O'Brien,* 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968). If the City's ordinance is unrelated to expression, then the less stringent standard set forth in *O'Brien* applies. *Id.*

### A. Whether display of the American flags in the context of this case is expressive conduct.

Plaintiffs claim that their act of displaying twenty-three flags at the automobile dealership is expressive conduct. They indicate that in late 1987 George Hill, a Viet Nam veteran and owner of the A.B.C.

---

**1.** Section 134.008(18) provides as follows:
*Flags.* One flag may be placed on any residentially zoned property and up to two (2) flags may be placed on any nonresidentially zoned property without a permit. Such flags shall represent a governmental unit or body and shall be positioned so that no part of the flag is able to encroach over a public right-of-way.

**2.** The case law of the Fifth Circuit prior to September 30, 1981 has been adopted as precedent in this judicial circuit. *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc).

Flag Company, approached Dimmitt Chevrolet regarding installation of a flag display on the property. (¶¶ 3–4, Dimmitt Affidavit). Mr. Hill has made creating patriotic flag displays his life's work. *Id.* Plaintiffs emphasize that they have never used the flag display in connection with sales, advertising or promotion, and that no commercial flags have ever been displayed on their property. *Id.* at ¶¶ 9, 11. They contend that the American flag display "is intended to be expressive and symbolic, in communicating the message of the American flag." *Id.* at ¶ 13.

The United States Supreme Court has held that conduct is to be considered expressive if 1) an intent to convey a particularized message accompanies the conduct; and 2) the likelihood is great that those viewing the conduct will understand the message. *Spence*, 418 U.S. at 410–11, 94 S.Ct. at 2730. Several cases address expressive conduct relating to flags. See *United States v. Eichman*, 496 U.S. 310, 110 S.Ct. 2404, 110 L.Ed.2d 287 (1990); *Texas v. Johnson, supra; Spence, supra; Smith v. Goguen*, 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974); *West Virginia Bd. of Educ. v. Barnette*, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628; *Stromberg v. California*, 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931).

Defendants contend that Plaintiffs' articulated intent for displaying the American flag, "to communicate the message of the American flag," is not sufficiently particularized to pass constitutional muster. They claim that the "message of the flag" is broad and sweeping, and that each viewer understands a different message when viewing the American flag. In short, Defendants maintain that Plaintiffs have not engaged in expressive conduct because they cannot articulate one message they

seek to convey that all viewers will understand.

The Court, however, having carefully considered the caselaw set forth above, concludes that, under these circumstances, Plaintiffs engaged in expressive conduct by displaying the flags on their property. Plaintiffs, like the State of West Virginia in *Barnette*, have, at the very least, employed the flag "as a symbol of adherence to government as presently organized." 319 U.S. at 633, 63 S.Ct. at 1183. By voluntarily displaying the flags on their property, Plaintiffs "communicate by sign [their] acceptance of the political ideas it thus bespeaks" just as if they were formally pledging allegiance to the flag.[3] *Id.* Whatever personal meaning a viewer attaches to these flags, the viewer must understand that the gist of the message Plaintiffs wish to convey is that they recognize and acknowledge their adherence to the government of the United States.[4] Although Plaintiffs may have intended to convey a far more complex and wide-ranging idea, the basic, inherent message of support for the government is sufficient to warrant First Amendment protection as expressive conduct.

*B. Whether the City's Ordinance is Related or Unrelated to the Suppression of Expressive Conduct.*

Having found that the Plaintiffs' display of the flags is expressive conduct, the Court next must determine if the governmental interests offered by the City as justification for the ordinance are related or unrelated to the suppression of that conduct. If the City seeks to prohibit the expressive conduct precisely because of its communicative attributes, the ordinance should be found unconstitutional. See, *e.g., Barnes v. Glen Theatre, Inc.*, —— U.S.

---

**3.** As noted in *Texas v. Johnson, supra,* the flag is "pregnant with expressive content" and "as readily signifies this Nation as does the combination of letters found in 'America.'" 491 U.S. at 405, 109 S.Ct. at 2540.

**4.** As the Supreme Court stated in *Barnette,*
Symbolism is a primitive but effective way of communicating ideas. The use of an emblem or flag to symbolize some system, idea, institution, or personality, is a short cut from mind to mind. Causes and nations, political parties, lodges and ecclesiastical groups seek to knit the loyalty of their followings to a flag or banner, a color or design ... Symbols of State often convey political ideas just as religious symbols come to convey theological ones.
319 U.S. at 632, 63 S.Ct. at 1182.

——, ——, 111 S.Ct. 2456, 2466, 115 L.Ed.2d 504 (Scalia, J., concurring); *Eichman, supra; Texas v. Johnson, supra.* However, if the suppression of the communicative aspect of the conduct is merely an incidental effect of forbidding the conduct for other reasons, the ordinance should stand if it meets the requirements set forth in *O'Brien. See* 391 U.S. at 377, 88 S.Ct. at 1679.

Having carefully reviewed the record, the Court finds that Defendants have cited three governmental interests for the two-flag limitation on non-residential properties: 1) to prevent commercialization of the flag (Admin. Hr'g Tr. at 37, 39, 80); 2) to avoid visual clutter and preserve the community aesthetics; and 3) to prevent distraction to motor vehicle operators, bicyclists or pedestrians. The Court shall focus on these respective governmental interests to ascertain if any of them sufficiently justify the City's ordinance.

1. Whether the City's interest in preventing the commercialization of the flag justifies its ordinance.

■ At the Administrative Hearing held on May 10, 1988, regarding whether Plaintiff Lawrence H. Dimmitt, III was entitled to a variance to allow him to fly twenty-three American flags on his property, Defendant John Richter, Development Code Administrator for the City of Clearwater, Florida, testified that he, with the help of the Clearwater City Commission, had drafted the sign code (Admin. Hr'g Tr. at 36). When questioned regarding Section 134.008(18) of the Sign Code, which provides for the display of one governmental flag per residence and two governmental flags per nonresidence, Mr. Richter testified that his basis or rationale for the numbers set forth in this section was "to limit commercialization of the flag."[5] *Id.* at 37. Mr. Richter explained as follows:

The rationale is to allow everybody to express their allegiance by way of displaying a flag on residential and nonresi-

dential properties alike. With regard to the limitations on more flags on commercial properties, it's to avoid the commercialization of the flag. On residential properties, it just seems it would be extremely unusual. In fact, I can't ever recollect an instance in my life where I have seen more than one American flag or one flag displayed on a residential property. The one seems to be a perfectly normal, conventional number.

If there's to be something more than that for either a residential or commercial [sic] property, then the proper vehicle by which to have that requested would be through a variance to the code.

*Id.* at 39–40.

Based upon Mr. Richter's statements, it appears that the main rationale behind Section 134.008(18) of the City's Sign Code is to prevent the commercialization of the American flag. This rationale is analogous to the State's asserted interest in *Texas v. Johnson, supra,* in which the State claimed that criminal sanctions for flag desecration were supported by the State's interest in "preserving the flag as a symbol of nationhood and national unity." 491 U.S. at 410, 109 S.Ct. at 2542. As the Supreme Court noted,

The State, apparently, is concerned that such conduct will lead people to believe either that the flag does not stand for nationhood and national unity, but instead reflects other, less positive concepts, or that the concepts reflected in the flag do not in fact exist ...

*Id.* Similarly, it appears that here the City's major concern is that display of the flag by commercial entities in a manner that calls attention to their enterprise will cause people to believe that the flag does not stand for nationhood and national unity, but instead for commercial gain and gimmickry.

The Court finds that this concern, like the analogous state concern in *Texas v. Johnson,* relates solely to the message a

---

**5.** Mr. Richter also indicated that, "Well, I thought my response was directly related to the hearing this afternoon, which is on commercially zoned property, but if we are talking about two flags, two or more flags in a residential area, I guess I could not necessarily regard that to be commercialism ..."

person's treatment of the flag communicates, and thus is related to the suppression of free expression. *Id.* Since any individual's display of more than one, or if nonresidential, two, flags was restricted because it might convey a commercial message, the Court must subject this asserted interest to the "most exacting scrutiny." *Id.* at 412, 109 S.Ct. at 2543.

Clearly a governmental entity may not draft an ordinance proscribing expressive conduct "simply because society finds the idea itself offensive or disagreeable." *Id.* at 414, 109 S.Ct. at 2544. Although the City, and most citizens of the United States, may find preventing commercialization of the American flag to be a laudable goal, the City cannot "foster its own view of the flag by prohibiting expressive conduct relating to it." *Id.* at 415, 109 S.Ct. at 2545. Accordingly, the Court concludes that the City's interest in preventing commercialization of the American flag does not justify Section 134.008(18) of its Sign Code.

2. Whether the City's interests in avoiding visual clutter, preserving the community aesthetics, and preventing distraction to motorists justifies its ordinance.

■ The Court notes that Section 134.004 of the Sign Code specifically sets forth purposes for the ordinance, several of which address concerns regarding visual clutter and preserving community aesthetics. These purposes clearly implicate "non-speech" elements of the flag display. As indicated in *O'Brien, supra,* "This [United States Supreme] Court has held that when 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." 391 U.S. at 376, 88 S.Ct. at 1678. *O'Brien* then sets forth a four-part test for determining whether the governmental limitations imposed on the conduct are constitutional.

Defendants, however, maintain that the Court should not apply the *O'Brien* test because this case involves commercial speech. Defendants contend that

> The overall effect of the flag display at the Dimmitt property is strikingly similar to the display of multi-colored flags attached to the tops of the light poles at a Nissan dealership ... The flags and the poles are approximately the same size; automobiles are parked at their bases. At the Nissan dealership, the eye is drawn to a large sign reading, "Nissan," and, further up the road, to signs for other automobile dealers ...
>
> The City's ordinance would apply to any automobile dealer who might desire to display the commercial flags illustrated by the photographs attached to Affidavit No. 2 of Geri Doherty. The Plaintiffs have simply substituted the American flag for a commercial flag. The manner of their display is otherwise the same. In this context, the Plaintiffs' flag display is commercial exploitation of the American flag, not protected speech.

(Defendants' Mem. in Supp. of Mot. for Summ. J. at 13–14). Defendants maintain that, since Plaintiffs' expressive conduct constitutes commercial speech, the Court should apply the less stringent test for commercial speech as set forth in *Central Hudson Gas and Elec. Corp. v. Public Serv. Comm'n of New York,* 447 U.S. 557, 566, 100 S.Ct. 2343, 2351, 65 L.Ed.2d 341 (1980), *Harnish v. Manatee County,* 783 F.2d 1535 (11th Cir.1986), and *Don's Porta Signs v. City of Clearwater,* 829 F.2d 1051 (11th Cir.1987).

Defendants claim that the flag display here is as commercially exploitative as the use of the flag on a beer bottle label in *Halter v. Nebraska,* 205 U.S. 34, 27 S.Ct. 419, 51 L.Ed. 696 (1907). In *Halter,* the Supreme Court upheld a state statute which prohibited any person from, *inter alia,* 1) placing an advertisement upon any American flag for exhibition or display; or 2) exposing to public view or using for any purpose an article of merchandise or a receptacle of merchandise upon which an American flag has been placed to call attention to or advertise *the article on which it has been placed. Id.* at 46, 27 S.Ct. at 423 (emphasis added). The Supreme Court

has emphasized that *Halter* involved purely commercial rather than political speech. *Texas v. Johnson*, 491 U.S. at 415 n. 10, 109 S.Ct. at 2545 n. 10.

The Court would consider applying *Halter* here if Plaintiffs had printed advertisements on American flags or hung American flags on its cars.[6] Arguably such speech could be considered purely commercial in nature. However, Defendants have presented no record evidence establishing that there is not a political element to Plaintiffs' expressive conduct. Instead, Defendants ask the Court to presume from the manner in which the flags are displayed that the sole message Plaintiffs wish to convey is "Come on in and buy a car!" On the other hand, Plaintiffs have indicated that their intent is to "convey the message of the American flag." (Dimmitt Affidavit at ¶ 13).

There is insufficient record evidence to create a genuine issue of material fact as to whether Plaintiffs' speech is commercial in nature. If any line-drawing is to be done, the Court must draw it so as to ensure First Amendment protection for the display of the American flag. Defendant argues that Plaintiffs' flag display resembles commercial displays of multi-colored flags which attract the attention of potential customers, and asks the Court to infer that Plaintiffs have no patriotic or political motive whatsoever for their display. Defendants also argue that Plaintiffs installed the flags as "wind devices" to draw attention to their property or to outline their property lines. Such inferences are insufficient to create a genuine issue of material fact as to whether Plaintiffs' expressive conduct constitutes pure commercial speech. The Court therefore will apply the *O'Brien* test to the remaining governmental justifications for the ordinance.

■ Under *O'Brien*, the governmental regulation upon expressive conduct is sufficiently justified if

1.  The regulation is within the constitutional power of the Government;
2.  The regulation furthers an important or substantial interest;
3.  The governmental interest is unrelated to the suppression of free expression; and
4.  The incidental restriction of First Amendment interests is no greater than is essential to furtherance of the state's interest.

391 U.S. at 376, 88 S.Ct. at 1678. The City has identified its remaining interests as avoiding visual clutter and preserving community aesthetics, and preventing distraction of motorists. The Court finds that the ordinance is within the City's constitutional power and that these interests are important, substantial, and unrelated to the suppression of free expression. However, for the reasons set forth below, the Court concludes that the restriction of First Amendment interests is far greater than is essential to furtherance of the City's interests.

First, with regard to the City's interest in avoiding visual clutter and preserving community aesthetics, Defendant Richter, the ordinance's author, made the following statements when asked how he drew the line to determine that more than two flags constituted visual clutter:

> I think the basis for the determination is the way in which the flags are displayed. I'm going to be quite honest with you. I'm going to have trouble referring to the displaying of more than one flag as necessarily creating visual clutter. In my opinion, you could have multiple flags displayed, and while it might perhaps be regarded as perhaps being distracting to motorists, it certainly wouldn't—I'd stop short of saying that multiple flags represent visual clutter.

(Admin. Hr'g Tr. at 41). When asked how it would be determined whether a display constituted visual clutter, Mr. Richter replied, "I think it's going to—I think it's going to depend on the motivation of the

---

6.  The Court must question the validity of *Halter* after *Texas v. Johnson*. The Supreme Court itself noted that *Halter* was decided nearly twenty years before the Court concluded that the First Amendment applies to the States by virtue of the Fourteenth Amendment. 491 U.S. at 415 n. 10, 109 S.Ct. at 2545 n. 10.

person who is displaying the flag." *Id.* at 42.

The Court emphasizes that the ordinance at issue here *prohibits* a person from placing more than one flag on any residentially zoned property and more than two flags on any nonresidentially zoned property without a permit. The ordinance also mandates that the flag *must represent a governmental unit or body.* Finally, as Mr. Richter concedes, the City provides *no permitting process.* A noncomplying party's only recourse is to seek a variance.[7] *Id.* at 40.

The Court, especially in light of Mr. Richter's testimony, cannot help but conclude that the ordinance as written is a far greater restriction upon First Amendment interests than is essential to further the City's interest in avoiding visual clutter and preserving aesthetics. First, as Plaintiffs point out, the same restrictions apply whether the nonresidentially zoned property is comprised of one-fifth of an acre or five hundred acres. Certainly visual clutter would be much easier to avoid on five hundred acres than on one-fifth of an acre. The ordinance is simply not tailored to restrict the use of flags so as to satisfy the governmental interest claimed.

Finally, the City points to another purpose for the ordinance: to prevent motorists and pedestrians from being distracted by a proliferation of flags. Again, the Court fails to see how a display of ten flags fifty yards off the roadway would constitute a distraction. The ordinance is extremely overbroad and is far more restrictive than necessary.[8]

Based upon the foregoing, the Court concludes that Section 134.008(18) is unconstitutional as enacted and as applied. It is therefore

ORDERED and ADJUDGED that:

1. Plaintiffs' Motion for Partial Summary Judgment (doc. 31) is GRANTED.

2. Defendants' Motion for Summary Judgment (doc. 21) is DENIED.

3. Section 134.008(18) of Defendant City of Clearwater's Sign Code is hereby declared unconstitutional and invalid.

4. Defendants are hereby ENJOINED from enforcing Section 134.008(18) as it is presently written and from interfering with Plaintiffs' display of the American flag under the existing Sign Code.

5. Plaintiffs are hereby AWARDED their costs and reasonable attorneys' fees in accordance with the provisions of 42 U.S.C. § 1988. The Court reserves jurisdiction to determine the reasonableness of any claimed costs and attorneys' fees.

6. The Clerk of the Court will enter judgment in favor of Plaintiffs and consistent with this Order.

DONE and ORDERED.

7. The Court notes that the City's variance requirements are extremely strict and would virtually never result in the granting of a variance to a party wishing to display a greater number of flags.

8. The Court has other problems with the ordinance that it will not discuss at length. For example, the City has provided no justification for the ordinance's limitation to governmental flags. Surely a Greenpeace flag or flags displaying other organizations' logos would be entitled to some First Amendment protection. These forms of expression are prohibited entirely. The ordinance is also defective because it refers to a permitting process which does not exist.