[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-10931

_____

ADAM LACROIX,

Plaintiff-Appellant,

*versus*

TOWN OF FORT MYERS BEACH, FLORIDA,
BILL STOUT,
in his individual capacity and acting as a code compliance
officer for the Town of Fort Myers Beach, Florida,
ROXANNE TUCCI,
in her individual capacity and acting as a code compliance
officer for the Town of Fort Myers Beach, Florida,

Defendants-Appellees,

2                    Opinion of the Court                    21-10931

OFFICER LUCCI,

                                                            Defendant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 2:20-cv-00992-SPC-NPM

_____

Before JILL PRYOR, GRANT, and MARCUS, Circuit Judges.

MARCUS, Circuit Judge:

Adam LaCroix wants to share his religious message on the public streets and sidewalks of Fort Myers Beach, Florida ("the Town"). But Chapter 30 of the Town's Land Development Code (hereinafter, "the Ordinance") has created complications for La-Croix.  To reduce visual blight and increase traffic safety, the Ordinance has prescribed an elaborate permitting scheme for all signs to be displayed within the Town. Among other things, and most significantly for our purposes, the Ordinance has entirely prohibited some categories of signs, including portable signs.  LaCroix carried a portable sign to spread his message and, after receiving a written warning, the Town issued him a citation.

He sued the Town, Officer Stout, and Officer Tucci (the officers who cited him) in their individual and official capacities for

declaratory, injunctive, and monetary relief, alleging violations of the First Amendment, the Equal Protection Clause, and Florida's Religious Freedom Restoration Act. The district court denied La-Croix's motion for a preliminary injunction, concluding that the Ordinance's ban on portable signs was content-neutral and narrowly tailored to serve a significant governmental interest. The trial court also rejected his Equal Protection claim, and the claim that the Ordinance conferred unbridled discretion on the Town's officials.

The Town's complete ban on all portable signs carried in all locations almost surely violates the First Amendment. Although we agree with the district court that the Ordinance's prohibition on portable signs is content-neutral, the codification still likely fails intermediate scrutiny because it entirely forecloses a venerable form of speech and does not leave open alternative channels of communication. We, therefore, reverse the judgment of the district court denying preliminary injunctive relief and remand for further proceedings consistent with this opinion.

## I.

These are the essential facts and procedural history. The Town of Fort Myers Beach, Florida passed the Ordinance in order to regulate all signage in the Town. The goal was to prevent visual blight and confusion while protecting the free speech rights of sign owners. The Ordinance attempts to achieve these ends broadly in two ways. First, section 30-5 of the Ordinance categorically

prohibits twenty-four types of signs; included amongst them is the flat prohibition against portable signs. *See* TOWN OF FORT MYERS BEACH, FLA., CODE OF ORDINANCES appendix A, ch. 30, § 30-5 (2010). Second, sections 30-55 and 30-6 of the Ordinance require that all signs displayed in the Town must first obtain a permit, but also exempt twenty-six different kinds of signs from this requirement. *Id.* §§ 30-55, 30-6. These exempt signs include, among others, real estate/open house signs, garage sale sales, and temporary signs. *Id.* § 30-6.

On October 1, 2020, Adam LaCroix was peaceably attempting to share his religious message on a public sidewalk in the Town when Officer Stout issued a written warning for violating the Ordinance's ban on portable signs. Then, on December 17, 2020, Officer Tucci issued LaCroix a written citation for the same conduct. Although the record does not tell us precisely the dimensions of the sign LaCroix held nor its exact message, we know that LaCroix said he shared his "religious, political and social message" which "is one of hope and salvation that Christianity offers." We also know that the citing officers referenced the section of the Ordinance that bans portable signs (section 30-5(18)) on the citation.

On December 18, 2020, LaCroix called a Town official about the citation. He explained that he was not carrying a sign on December 17, but the Town official replied that he was cited because he was the "leader" of a group that was carrying portable signs on that day. LaCroix complained that this was unfair; the Town official dismissed the citation. The complaint alleges that LaCroix

intends to carry portable signs sharing his religious message in the future, the same behavior that earned him a citation in the first place. D.E. 10 ¶ 36.

LaCroix sued the Town and Officers Stout and Tucci in the Middle District of Florida, alleging violations of the First Amendment, Equal Protection Clause, and Florida's Religious Freedom Restoration Act. He moved the district court for preliminary injunctive relief. But the district court denied his application, concluding that the Ordinance was content-neutral and that it was justified by the Town's interests in aesthetics and traffic safety. The district court further concluded that LaCroix's unbridled discretion claim failed because "the Town's ban on portable signs is not a licensing or permitting scheme that grants Town officials with discretion [to] allow or disallow speech." Finally, the district court rejected LaCroix's Equal Protection "class-of-one" claim.

LaCroix timely filed this interlocutory appeal.

## II.

We review a district court's order denying a preliminary injunction for abuse of discretion, *Siegel v. LePore*, 234 F.3d 1163, 1175 (11th Cir. 2000) (en banc), and its legal conclusions *de novo*. *Keister v. Bell*, 879 F.3d 1282, 1287 (11th Cir. 2018). And we review a district court's findings of "historical facts"--the who, what, when, where, and how--for clear error, but its findings of "constitutional facts" *de novo*. *Id.* (citing *Booth v. Pasco Cnty.*, 757 F.3d 1198, 1210 (11th Cir. 2014)).

6                    Opinion of the Court                    21-10931

### A.

We begin, as we must, with a question about our power to hear this case.  Despite the dismissal of his citation, the district court concluded LaCroix had standing to sue because he clearly alleged that he intended to speak again using a handheld placard in public places in Fort Myers Beach, that he intended to do so in the same location where he had been cited, and that he "is fearful of future repeated citation and fines for exercising his constitutional and civil rights."  LaCroix has said enough to establish Article III standing.

LaCroix must sufficiently allege (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58 (2014) (quotation marks omitted).  Although LaCroix's citation was dismissed, he may still establish an injury-in-fact by showing that threatened enforcement is sufficiently imminent. "Specifically, [the Supreme Court has] held that a plaintiff satisfies the injury-in-fact requirement where he alleges an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Id.* at 159 (quotation marks omitted). LaCroix has alleged a credible threat of enforcement.

In *Steffel v. Thompson*, a plaintiff was warned to stop handbilling and threatened with prosecution by the state if he disobeyed. 415 U.S. 452, 455–56 (1974).  Steffel stated his intention to

continue handbilling (an activity he claimed was constitutionally protected); and his companion's prosecution showed that his "concern with arrest" was not "chimerical." *Id.* at 459. The Supreme Court concluded the plaintiff had standing. *Id.* at 460. Here, too, LaCroix has been cited for engaging in the very behavior he intends to repeat on the streets of the Town. The Town's past conduct and its threat of future enforcement is enough to meet the injury-in-fact requirement; and the other standing elements are not in dispute.

## B.

LaCroix lodges both a facial and an as-applied First Amendment challenge to the Ordinance.[1] He references the Free Exercise and Free Speech Clauses in separate claims, but we treat them together because Supreme Court "precedent establishes that

---

[1] LaCroix styled his as-applied First Amendment claims (and his Florida Religious Freedom Restoration Act claim) against both the Town and the Officers. In a footnote of their answer brief, the Town notes that the Officer-Defendants join in the brief but maintains that the officers were not proper parties to La-Croix's request for injunctive relief because "[t]hey have no authority to establish or dictate the Town's procedures or policies." Appellees' Br. at 9 n.3. For this argument, the Town cites one out-of-circuit district court case. Because the Officers make only a passing reference to this argument in a footnote of the Town's brief, it is waived. *Brown v. United States*, 720 F.3d 1316 (11th Cir. 2013) (holding argument raised only in three separate footnotes was waived); *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("The Federal Rules of Appellate Procedure plainly require that an appellant's brief 'contain, under appropriate headings and in the order indicated ... a statement of the issues presented for review.'" (citing Fed. R. App. P. 28(a)(5)). We also note the district court did not address the argument either.

private religious speech, far from being a First Amendment orphan, is as fully protected under the Free Speech Clause as secular private expression." *Capitol Square Rev. & Advisory Bd. v. Pinette*, 515 U.S. 753, 760 (1995).

First, LaCroix claims the district court erred in concluding that the portable sign ban contained in the Ordinance is content-neutral. Instead, he says section 30-5(18) is content-based and subject to strict-scrutiny. "The principal inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). *See also City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, No. 20-1029, --- S. Ct. ----, 2022 WL 1177494, at *6 (U.S. Apr. 21, 2022). As we see it, the district court got this issue right because all portable signs are prohibited, irrespective of the message they convey. The flat prohibition on portable signs is content-neutral.

We begin with the text of the Ordinance. Portable signs are defined as "any moveable sign not permanently attached to the ground or a building." Ordinance § 30-2. The Ordinance makes clear that portable signs are banned, and it *lists no exceptions*. *Id.* § 30-5(18) ("The following signs are prohibited . . . (18) Portable signs."). Portable signs, like 23 other kinds of signs, are prohibited without regard to content.

LaCroix reasons this way: While the Ordinance purports to flatly ban all portable signs in Section 30-5(18), Section 30-6

exempts certain portable signs, as defined by their content, from the permitting process. Section 30-55 provides that all signs in Fort Myers Beach must first obtain a permit, while Section 30-6 exempts 26 kinds of signs from the permitting process. Among others, some signs that do not have to go through the permitting process are garage sale signs, real estate signs, incidental signs not exceeding two square feet in area, and temporary signs (including temporary election signs).

LaCroix says that some of these signs are portable but are nonetheless permitted because of their content: Garage sale information, real estate information, and the like. He figures that these signs are portable because some of these signs are defined as "temporary" signs and a temporary sign is inherently portable. Therefore, he concludes, because certain temporary signs are exempted from the permitting process, the Ordinance creates content-based exceptions to the flat ban on portable signs.

While clever, LaCroix's reading of the Ordinance is not the most natural one. A "temporary sign" is defined as,

> [a] sign displayed for a fixed, terminable length of time. Temporary signs are intended to be *removed* after the temporary purpose has been served. Included are for sale, lease or rent signs, political signs, service signs, special event signs, construction signs, directional signs to special or temporary events and signs of a similar nature.

Ordinance § 30-2 (emphasis added). "Temporary signs" are defined by reference to their temporality, whereas "portable signs" are defined by reference to how they are physically displayed. Consider one of the exempt-from-permitting categories--real estate signs. A real estate sign is defined in the Ordinance as "a temporary sign which advertises the sale, exchange, lease, rental, or availability of the parcel, improved or unimproved, upon which it is located." *Id.* Thus, for example, a sign that reads, "House for sale, call 305-999-999," is stuck into the ground with two metal prongs, and is removed two weeks later, does not need a permit. But if a homeowner were to stand on his own lawn, holding that same sign in his hand, it would be prohibited under the Ordinance's ban on portable signs. This reading is bolstered by the Ordinance's use of the word "removed" when it describes what happens to a temporary sign once its purpose has been served. If a sign can be "removed," the obvious inference is that it is attached to something--either the ground or a structure. A "portable" sign, however, is defined as one that is "movable"; it is "*not* permanently attached to the ground or a building." Ordinance § 30-2 (emphasis added).

The modifier "permanently" in the definition of a portable sign does not mean that "temporary" signs are "portable." In context, "permanently attached" means that the sign is fixed to the ground or a building. Local ordinances, like all statutes, are subject to traditional rules of statutory interpretation. *See Artistic Ent., Inc. v. City of Warner Robins*, 331 F.3d 1196, 1206, n.14 (11th Cir. 2003) ("A municipal ordinance is essentially a 'local statute;' it is

subject to the same rules that govern the construction of statutes."). The "noscitur a sociis" canon tells us that "a word is known by the company it keeps." *Nehme v. Smithkline Beecham Clinical Labs., Inc.*, 863 So. 2d 201, 205 (Fla. 2003). Looking at the whole of the Ordinance and reading the portable sign provision in context, we think it clear that Section 30-5(18)'s use of the term "moveable" focuses on signs that are not fixed or attached in one place.

Indeed, a broader reading of the word "portable" potentially leads to absurd results. Almost every category of exempt sign contemplated by the Ordinance could be described as "portable" under this expansive definition. Tow away zone signs? These are often relocated as parking rules change and would thus be "portable" under LaCroix's understanding of the Ordinance. Interior window signs? Easily removed from the building and often changed, perhaps depending on which sale the business happens to be offering that week. We could go on, but the point is that LaCroix's expansive reading of the word "portable" threatens to create an exception that swallows the entire Ordinance. *See Busby v. State*, 894 So. 2d 88, 100 (Fla. 2004) (noting the Court's "charge of interpreting statutes as a harmonious whole, giving effect to each of their constituent parts"); ANTONIN SCALIA & BRYAN A. GARNER, *Reading Law: The Interpretation of Legal Texts* 180 (2012) (Under the harmonious-reading canon, "there can be no justification for needlessly rendering provisions in conflict if they can be interpreted harmoniously.").

Still other provisions of the Ordinance confirm our reading. Thus, for example, Section 30-5(20) of the Ordinance prohibits "[s]andwich-board signs[,]² [e]xcept as permitted by subsections 27-51(c)(4) and (5) for PWVL and PAL businesses." Ordinance § 30-5(20) (emphasis added). And Section 30-5(7) prohibits "[b]anners, pennants, or other flying paraphernalia, except as permitted in section 30-141 (Temporary signs)." Id. § 30-5(7) (emphasis added). These "exceptions from the exceptions" strongly suggest that the drafters of the Ordinance knew how to carve out certain signs from the flat ban on portable signs if they intended to do so. But they did not. One familiar canon of statutory construction is "expressio unius est exclusio alterius," which explains that "the mention of one thing implies the exclusion of another." Young v. Progressive Se. Ins. Co., 753 So. 2d 80, 85 (Fla. 2000) (quotation marks omitted). There are carve-outs to the general prohibitions listed in Section 30-5 for some categories of signs, but not others--including portable signs. The notable absence of the carve-out for portable signs buttresses still further the conclusion that there are indeed no exceptions to the ban on portable signs.

---

² A "sandwich-board sign" is defined as "An easily moveable sign not attached to the ground that is supported by its own frame which generally forms the cross-sectional shape of an A. For purposes of this code, sandwich signs are not considered portable signs." Ordinance § 30-2.

The reading the district court afforded the Ordinance's ban on portable signs is the better one. We agree that Section 30-5(18) is content-neutral.

## C.

Content neutrality, however, does not save the Ordinance from First Amendment scrutiny.

As an initial matter, the Supreme Court has "voiced particular concern with laws that foreclose an entire medium of expression." *City of Ladue v. Gilleo*, 512 U.S. 43, 55 (1994). *See, e.g.*, *Lovell v. City of Griffin*, 303 U.S. 444, 451–52, (1938) (invalidating ordinance that banned the distribution of literature within the municipality); *Jamison v. Texas*, 318 U.S. 413, 416 (1943) (invalidating ordinance that prohibited the dissemination of handbills on the public streets); *Martin v. City of Struthers*, 319 U.S. 141, 145–49 (1943) (invalidating ordinance that banned the door-to-door distribution of literature); *Schad v. Mount Ephraim*, 452 U.S. 61, 75–76 (1981) (reversing convictions pursuant to ordinance excluding live entertainment from commercial zones). But even if the Ordinance did not entirely foreclose a long-accepted medium of expression, it is still subject to intermediate scrutiny. *Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*, 11 F.4th 1266, 1291 (11th Cir. 2021) ("[C]ontent-neutral regulation of expressive conduct is subject to intermediate scrutiny."). There is no dispute that portable, handheld signs often convey political, religious, or personal messages. And, therefore, the Ordinance must be "narrowly tailored to serve a significant governmental interest, and . . . leave open

ample alternative channels for communication of the information." *Ward*, 491 U.S. at 791 (quotation marks omitted).

LaCroix contends that the prohibition on portable signs contained in Section 30-5(18) of the Ordinance entirely forecloses an important medium of expression, just like the ordinance the Supreme Court struck down in *City of Ladue v. Gilleo*. There, a city ordinance prohibited homeowners from displaying any signs on their property except "residence identification" signs, "for sale" signs, and "signs warning of safety hazards." *City of Ladue*, 512 U.S. at 45. The city in *Ladue* professed an interest in maintaining the aesthetic beauty of the city and avoiding safety and traffic hazards. *Id.* at 47. The Court assumed that the ordinance was content-neutral and did not apply strict scrutiny. *Id.* at 53.

First, the Supreme Court characterized the ordinance as covering "absolutely pivotal speech" such as "a sign protesting an imminent governmental decision to go to war." *Id.* at 54. The ordinance differed from some other codifications, which only applied to commercial speech. *Id.* This sweeping ban meant that the city "ha[d] almost completely foreclosed a venerable means of communication that is both unique and important. It ha[d] totally foreclosed that medium to political, religious, or personal messages. Signs that react to a local happening or express a view on a controversial issue both reflect and animate change in the life of a community." *Id.* Writing for a unanimous Court, Justice Stevens observed that residential signs are unique because they offer important information about the identity of the speaker precisely on

account of their location.  *Id.* at 56.  Moreover, this means of communication is unusually inexpensive and exceedingly convenient to prepare.  *Id.* at 57.  And it reaches an audience (neighbors) that could not be reached nearly as well by other means.  *Id.* at 56–57.

Thus, the Court reasoned that the city ordinance either foreclosed an entire medium of exchange or left open precious little as an alternative channel for communication.  *Id.*  The Court concluded that in light of this country's "special respect for individual liberty in the home," "[m]ost Americans would be understandably dismayed . . . to learn that it was illegal to display from their window an 8- by 11-inch sign expressing their political views."  *Id.* at 58.  Thus, despite its content-neutrality, the city's codification violated the First Amendment.

This case is much like *City of Ladue*, except that the ban on carrying portable signs goes far beyond just prohibiting a homeowner from carrying a sign on his property.  The Town of Fort Myers Beach's Ordinance totally bans portable signs--whether they are carried in the town square or on a public street or on a homeowner's front lawn.  Plainly, portable signs include handheld signs and placards.  These signs are a "venerable means of communication that is both unique and important."  *Id.* at 54.  Just like the political signage banned from residential property in *City of Ladue*, handheld signs are inexpensive, they are easy to create and customize, and they can reach a wide variety of listeners.  *See id.* at 56 ("Displaying a sign from one's own residence often carries a message quite distinct from placing the same sign someplace else, or

conveying the same text or picture by other means."). The identity of the sign's holder or the location in which he is holding it may communicate something separate from the contents of the sign itself.

The rich tradition of political lawn signs perhaps is surpassed only by America's history of marches and rallies dotted with handheld signs and placards of every imaginable description and covering every conceivable political message. Images of demonstrators holding portable signs immediately spring to mind: the March on Washington, the Women's March, the 2000 presidential election protests in Dade County and Tallahassee, the Black Lives Matter protests in nearly every city in the country, the Tea Party protests, the Women's Suffrage March, and many more. All of them involved people carrying portable signs. And all were easy to create and customize. If the Town's prohibition on carrying all portable signs were to stand, all kinds of expressive speech protected by the First Amendment would be barred. *See United States v. Grace*, 461 U.S. 171, 176 (1983); *Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*, 901 F.3d 1235, 1241 (11th Cir. 2018); *see also N.L.R.B. v. Fruit & Vegetable Packers & Warehousemen, Loc. 760*, 377 U.S. 58, 63 (1964) (noting that "a broad ban against peaceful [union] picketing might collide with the guarantees of the First Amendment"). The long and short of it is that the government cannot foreclose so fully so traditional a medium of expression. *See, e.g., Hill v. Colorado*, 530 U.S. 703, 786 (2000) (Kennedy, J., dissenting.).

The Town argues, however, that *City of Ladue* is inapplicable because it had nothing to do with portability. Instead, the Town says *Members of City Council of City of Los Angeles v. Taxpayers for Vincent* offers the better guidepost. *See* 466 U.S. 789 (1984). There, the Supreme Court considered an as-applied challenge brought by plaintiffs who posted election-related signs on a public utility pole in violation of a city ordinance that prohibited posting signs on public property. The Court held that the content-neutral ordinance was narrowly tailored to serve the compelling government interest of eliminating visual blight because this substantial evil--visual blight--"is not merely a by-product of the activity, but is created by the medium of expression itself." *Id.* at 810. Thus, "the ordinance curtail[ed] no more speech than [was] necessary to accomplish its purpose." *Id.* The Court also observed that Los Angeles left open alternative means of communication because the plaintiffs could still speak and distribute literature in public spaces and "nothing in the findings indicates that the posting of political posters on public property is a uniquely valuable or important mode of communication." *Id.* at 812.

The Town relies heavily on *Vincent*. We remain unpersuaded. For one thing, as we've noted already, the Ordinance prohibits all portable signs carried everywhere--a sweep that goes far beyond posting political messages on public utility poles. For another, the argument presupposes that, although the Town's Ordinance applies to the broad category of portable signs, it still leaves open alternative channels of speech just like Los Angeles did in

*Vincent*.  But the laundry list of prohibited signs in Section 30-5 of the Ordinance suggests quite the opposite.  Along with portable signs, "pole signs," are banned.  A pole sign is defined as "[a] free-standing sign supported by an exposed structure of poles or other supports where the height of the exposed sign supports extends more than 18 inches from the ground to the bottom of the sign."  Vehicle signs are also banned.  And, generally, signs may not be "placed on any curb, sidewalk, post, pole, hydrant, bridge, tree, or other surface located on public property or over or across any street or public street."  Thus, a Fort Myers Beach resident may not hold a sign by hand, he may not put a sign in the ground if it is taller than 18 inches, he may not display his sign on his car, and he cannot place any signs in a public place.  Short of a bullhorn and running his voice hoarse, our Fort Myers Beach resident has precious few, if any, alternative channels of communication.

It is true that the "Constitution requires only that [Fort Myers Beach] leave open *an* alternative channel of communication, not *the* alternative channel of communication [LaCroix] desires."  *See CAMP Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1282 (11th Cir. 2006).  But it also remains true that the alternative channel (or channels) must be adequate and meaningful even if it is not the one LaCroix would have chosen.  *See Pine v. City of W. Palm Beach*, 762 F.3d 1262, 1274 (11th Cir. 2014).  The speaker must be able to effectively communicate his message to the intended audience in face of the Ordinance's restrictions.  Thus, for example, in *Pine*, we held that a West Palm Beach ordinance

that banned amplified sound within 100 feet of the property line of any health care facility left open "robust" alternative channels of communication because those who wish to express their views on abortion "are still free to talk, sing, hold up signs, and distribute literature to patients within the quiet zone." *Id.* at 1274–75 (quotation marks omitted). In sharp contrast, a resident of Fort Myers Beach who sought to preach to a group of passing motorists or to communicate that message without physically approaching the listener would be unable to do so anywhere in the Town.

This Ordinance totally bans portable signs. It does so in traditionally public fora like public parks or on public streets, it does so on residential lawns, and on commercial property as well. In fact, it does so everywhere in the Town. But these signs hold a unique place in America's proud tradition of free speech. Because the Ordinance completely bans this core canvas of expression, it likely violates the First Amendment, both facially and as applied. It does not leave open meaningful, effective alternative channels for communication. The small categories of signs the Ordinance permits are no substitute.

The Town is not rescued by its insistence that Eleventh Circuit precedents yield the opposite conclusion. In *Harnish v. Manatee County*, 783 F.2d 1535 (11th Cir. 1986), *Don's Porta Signs, Inc. v. City of Clearwater*, 829 F.2d 1051 (11th Cir. 1987), and *Messer v. City of Douglasville*, 975 F.2d 1505 (11th Cir. 1992), we upheld various bans on "portable" signs. But in each of these cases, the local laws targeted *commercial* portable signs. Moreover, the sign bans

in each case were much narrower.  In *Harnish*, the city defined a portable sign as

> [a]ny sign which is manifestly designed to be transported, including by trailer or on its own wheels, even though the wheels of such sign may be removed and the remaining chasis [sic] or support constructed without wheels is converted to an A or T frame sign or attached temporarily or permanently to the ground since this characteristic is based on the design of such a sign.

783 F.2d at 1539 n.5.  In *Don's Porta Signs, Inc.*, we noted that the sign regulations contained exemptions for political and other noncommercial speech.  829 F.2d at 1052 n.4.  And in *Messer*, portable signs were defined as "mobile/temporary, electrical or nonelectrical, *changeable copy* sign[s] . . . *mounted on a trailer type frame* with or without wheels or skids or portable wood or metal frame and not permanently attached to the ground."  975 F.2d at 1513 (emphasis added).  None of these cases addressed a prohibition on the display of portable signs everywhere in the town.  These precedents do not save Section 30-5(18) of the Ordinance.

Because this Ordinance's ban on portable signs entirely forecloses a venerable form of speech, despite being content neutral, it likely violates the First Amendment.

## D.

LaCroix also argues that the Ordinance's ban on portable signs vests the Town with unbridled discretion.  First, he says, it

affords no guidance as to whom the Ordinance should be enforced against.  He claims this explains why he was fined for being the apparent leader of a group of people who carried portable signs conveying the same religious message even though he carried nothing.  Second, he says the Ordinance poorly defines what constitutes a portable sign, giving enforcement officers too much room to decide who should be fined.  The district court rejected LaCroix's argument because it misapplied the unbridled discretion doctrine.  We agree.

The unbridled discretion doctrine is usually reserved for permitting schemes where the official has the power to grant or deny a permit for any reason or no reason at all.  *See Fort Lauderdale Food Not Bombs*, 11 F.4th at 1295; *see, e.g.*, *Barrett v. Walker Cnty. Sch. Dist.*, 872 F.3d 1209, 1220 (11th Cir. 2017) ("[T]he plainest example of an unconstitutional grant of unbridled discretion is a law that gives a government official power to grant permits but that provides no standards by which the official's decision must be guided."); *Forsyth Cnty. v. Nationalist Movement*, 505 U.S. 123, 134 (1992) ("The fee assessed will depend on the administrator's measure of the amount of hostility likely to be created by the speech based on its content.  Those wishing to express views unpopular with bottle throwers, for example, may have to pay more for their permit."); *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 150 (1969) ("For in deciding whether or not to withhold a permit, the members of the Commission were to be guided only by their own ideas of 'public welfare, peace, safety, health, decency,

good order, morals or convenience.'").  Here, we consider the obverse kind of permitting scheme--one where portable signs are categorically prohibited.  There is no room for the exercise of discretion, unbridled because of the absence of standards or otherwise.

## E.

Finally, LaCroix claims that the Town also violated Florida's Religious Freedom Restoration Act by substantially burdening his free exercise.  Fla. Stat. Ann. § 761.  The district court never addressed this claim, and LaCroix devotes only two vague sentences to it in his briefing in this Court.  Appellant's Br. at 52. In his motion for preliminary injunction relief in the district court, LaCroix did not mention Florida's Religious Freedom Restoration Act other than to observe that it tracks First Amendment analysis in some ways.  The issue was not fairly presented in the district court.  *Walker v. Jones*, 10 F.3d 1569, 1572 (11th Cir. 1994) ("[W]e have repeatedly held that an issue not raised in the district court and raised for the first time in an appeal will not be considered by this court.") (quotation marks omitted).  Even further, LaCroix did not properly raise his argument before this Court.  "[W]e will deem an appellant to have abandoned an argument where she makes only 'passing references' to it in the background sections of her brief--or, for that matter, even the brief's argument section." *LaCourse v. PAE Worldwide Inc.*, 980 F.3d 1350, 1360 (11th Cir. 2020). *See also Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[T]he law is by now well settled in this Circuit that a legal

21-10931                Opinion of the Court                23

claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

Because LaCroix did not give the district court, this Court, or the Town a fair opportunity to evaluate his FRFRA claim, he abandoned it.[3]

### III.

We have little difficulty concluding that LaCroix is substantially likely to succeed on the merits of his First Amendment claim. The district court did not address the other parts of the controlling test for injunctive relief. Our normal preference would be to remand the additional questions to the district court in the first instance. *Speer v. Miller*, 15 F.3d 1007, 1010 (11th Cir. 1994). But here, the resolution of the remaining questions is so clear cut that we reach them now.

---

[3] Next, LaCroix brings a "class of one" Equal Protection claim, alleging that he has been treated differently than someone carrying a flag with no commercial message or someone posting a garage sale sign, and there was no rational basis for the differential treatment. To establish a prima facie claim a plaintiff must prove that (1) he was treated different from similarly situated individuals, and (2) there was no rational basis for the differential treatment. *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1202 (11th Cir. 2007). We offer no opinion on LaCroix's Equal Protection claim. It is clear to us that the Ordinance's ban on portable signs almost surely facially violates the First Amendment and violated the First Amendment as it was applied to LaCroix here. It is unnecessary for us to address the Equal Protection claim.

In order to obtain preliminary injunctive relief, the moving party must establish "a substantial likelihood of success on the merits; [ ]irreparable injury will be suffered unless the injunction issues; [ ] the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and [ ] if issued, the injunction would not be adverse to the public interest." *Siegel*, 234 F.3d at 1176.  As we see it, LaCroix has abundantly satisfied each of these requirements.

Ordinances that violate the First Amendment are "per se irreparable injur[ies]." *Otto v. City of Boca Raton*, 981 F.3d 854, 870 (11th Cir. 2020); *Cate v. Oldham*, 707 F.2d 1176, 1188 (11th Cir. 1983) (quotation marks omitted); *FF Cosms. FL, Inc. v. City of Miami Beach*, 866 F.3d 1290, 1298 (11th Cir. 2017) ("[A]n ongoing violation of the First Amendment constitutes an irreparable injury."). When the nonmovant is the government, the third and fourth requirements--"damage to the opposing party" and "the public interest"--can be consolidated because neither the government nor the public has any legitimate interest in enforcing an unconstitutional ordinance. *Otto*, 981 F.3d at 870.  On this record we are satisfied that LaCroix has shown 1) a substantial likelihood of success on the merits of his First Amendment claim, 2) he will suffer irreparable injury if the injunction does not issue, 3) his injury outweighs any interest the Town may have in enforcing an unconstitutional ordinance, and 4) the injunction is not adverse to the public interest.

## IV.

Because the Ordinance's complete ban on portable signs anywhere in Town is likely unconstitutional, we turn finally to the question of severability. "[S]everability is a judicial doctrine recognizing the obligation of the judiciary to uphold the constitutionality of legislative enactments where it is possible to strike only the unconstitutional portions." *Coral Springs St. Sys., Inc. v. City of Sunrise*, 371 F.3d 1320, 1347 (11th Cir. 2004) (citing *Ray v. Mortham*, 742 So. 2d 1276, 1280 (Fla. 1999)). Severability of a local ordinance is a question of state law. *City of Lakewood v. Plain Dealer Publ'g. Co.*, 486 U.S. 750, 772 (1988); *Coral Springs St. Sys., Inc.*, 371 F.3d at 1347.

The Florida Supreme Court has suggested this test for discerning severability in *Smith v. Department of Insurance*:

> When a part of a statute is declared unconstitutional the remainder of the act will be permitted to stand provided: (1) the unconstitutional provisions can be separated from the remaining valid provisions, (2) the legislative purpose expressed in the valid provisions can be accomplished independently of those which are void, (3) the good and the bad features are not so inseparable in substance that it can be said that the Legislature would have passed the one without the other and, (4) an act complete in itself remains after the invalid provisions are stricken.

507 So. 2d 1080, 1089 (Fla. 1987) (quoting *Cramp v. Bd. of Pub. Instruction*, 137 So. 2d 828, 830 (Fla. 1962)).

We preliminarily enjoin only Section 30-5(18)--the subsection banning portable signs--and nothing more. The Ordinance's other prohibitions and its permitting scheme have independent meaning that remains effective and cohesive even when Section 30-5(18) is removed. The Ordinance itself expressly addresses severability and declares the town council's intention "that severability shall be applied to section 30-5 . . . so that each of the prohibited sign types listed in that section shall continue to be prohibited irrespective of whether another sign prohibition is declared unconstitutional or invalid." Ordinance § 30-155(c). Under Florida law, Section 30-5(18) is severable; the rest of the Ordinance is unaffected by this order.

★★★

The most natural reading of the Ordinance leads us to the conclusion that *all* portable signs are banned--regardless of whether they are political, religious, advertising a garage sale, or an open house. The Ordinance's ban on portable signs is content-neutral. But portable, handheld signs still are a rich part of the American political tradition and are one of the most common (if not *the* most common) methods of free expression. The ban on these signs leaves the residents of Fort Myers Beach without an effective alternative channel of communication; it very likely violates the First Amendment. Accordingly, the order of the district court is **REVERSED**, and the cause **REMANDED** for further proceedings consistent with this opinion.