[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-11299

_____

MARJORIE TAYLOR GREENE,

Plaintiff-Appellant,

*versus*

SECRETARY OF STATE FOR THE STATE OF GEORGIA,
CHARLES R. BEAUDROT,
in his official capacity as an Administrative Law Judge
for the Office of State Administrative Hearings
for the State of Georgia,
JOHN DOE, I,
GOVERNMENT ENTITY 1,

Defendants-Appellees,

DAVID ROWAN,
DONALD GUYATT,
ROBERT RASBURY,
DANIEL O. COOPER,
RUTH DEMETER,

Intervenor Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:22-cv-01294-AT

_____

Before WILSON, BRANCH, and LAGOA, Circuit Judges.

PER CURIAM:

Representative Marjorie Taylor Greene, a member of the U.S. House of Representatives for Georgia's 14th Congressional District, appeals the district court's denial of her Motion for Preliminary Injunctive Relief. In her motion, Rep. Greene asked the district court to enjoin the state court's application of O.C.G.A. § 21-2-5 ("Challenge Statute") against her to prevent her from being disqualified as a candidate for Congress under § 3 of the Fourteenth Amendment to the United States Constitution. After oral argument and careful consideration, and because of

intervening circumstances, we remand this case to the district court with instructions to dismiss the case as moot.

This lawsuit was prompted by related state court proceedings. Shortly before Rep. Greene filed this lawsuit in federal district court, a group of voters ("Challengers") in Rep. Greene's district challenged her eligibility to be on the primary ballot after she filed her candidacy for the upcoming election. The Challengers invoked the Challenge Statute—which permits an eligible voter to file a pre-election challenge to the qualification of a candidate for state or federal office—and argued that Rep. Greene was disqualified from serving in the U.S. House of Representatives under § 3 of the Fourteenth Amendment because she engaged in "insurrection" in connection with the events of January 6, 2021, at the U.S. Capitol.

Pursuant to Georgia law, a state administrative law judge ("ALJ") heard the voters' challenge. The ALJ held that the Challengers had not presented sufficient evidence to support their claim, finding Rep. Greene "did not 'engage' in the Invasion [of the U.S. Capitol]"—whether or not those events constituted "insurrection" under § 3 of the Fourteenth Amendment—and was therefore qualified to appear on the ballot. The Georgia Secretary of State, Brad Raffensperger, adopted the ALJ's conclusions. The Challengers petitioned for judicial review in the Superior Court of Fulton County, and the superior court affirmed the Secretary's decision. The Challengers then filed an application for

discretionary review of the superior court decision in the Supreme Court of Georgia, which was denied on September 1, 2022.

After the state case was initiated, Rep. Greene filed this action against Secretary Raffensperger and the ALJ in federal district court, seeking a preliminary injunction barring state officials from adjudicating the voters' challenge to her eligibility. The district court denied her motion for a preliminary injunction, holding that Rep. Greene failed to show a substantial likelihood of success on the merits, and Rep. Greene timely appealed to this Court. However, as discussed above, while her appeal from the federal proceedings have been pending in this Court, the state proceedings have concluded.

"We have jurisdiction to reach the merits of a case only where there is an active controversy." *Hand v. Desantis*, 946 F.3d 1272, 1275 (11th Cir. 2020). And "[a]n action that is moot cannot be characterized as an active case or controversy." *BankWest, Inc. v. Baker*, 446 F.3d 1358, 1363 (11th Cir. 2006) (quotations omitted). "The rule in federal cases is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Hand*, 946 F.3d at 1275 (quoting *Steffel v. Thompson*, 415 U.S. 452, 459 n.10 (1974)). "If events that occur subsequent to the filing of a lawsuit or an appeal deprive the court of the ability to give the plaintiff or appellant meaningful relief, then the case is moot and must be dismissed." *Id.* (quotations omitted); *see also Jews for Jesus, Inc. v. Hillsborough Cnty. Aviation Auth.*, 162 F.3d 627, 629 (11th Cir. 1998) (explaining that when a policy change had

given plaintiffs the relief that they sought, "there [was] therefore no meaningful relief left for the court to give" because "[t]he only remaining issue [was] whether the [policy at issue] *was* constitutional—which, at [that] stage, [was] a purely academic point").

As explained, in this federal lawsuit, Rep. Greene is seeking to enjoin the application of the Challenge Statute against her in the state proceedings to prevent her from being disqualified as a candidate for Congress under § 3 of the Fourteenth Amendment. However, the state proceedings under the Challenge Statute have concluded, and Rep. Greene has prevailed at each stage: the ALJ ruled in Rep. Greene's favor, Secretary Raffensperger adopted the ALJ's conclusions, the Superior Court of Fulton County affirmed the Secretary's decision, and the Supreme Court of Georgia denied the Challengers' application for discretionary review. Ultimately, Rep. Greene was not disqualified from being a candidate for Congress and is presently on the ballot for the upcoming election. Accordingly, we no longer have the ability to accord Rep. Greene meaningful relief.[1] We therefore hold that this case is moot.

---

[1] Rep. Greene's argument that this case is not moot because it falls within the "exception to the mootness doctrine for cases that are capable of repetition, yet evading review" is unavailing. *Hall v. Sec'y, Alabama*, 902 F.3d 1294, 1297 (11th Cir. 2018) (quotations omitted). A dispute qualifies for this exception only if (1) the challenged action is in its duration too short to be fully litigated before its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again. *Id.* Rep. Greene has not established that the exception applies in this case. Indeed,

6                 Opinion of the Court                 22-11299

This case is hereby **REMANDED** with instructions to **DISMISS** for mootness.

---

at oral argument, Rep. Greene's counsel conceded twice that it would be unlikely that Rep. Greene would face another challenge under § 3 of the Fourteenth Amendment due to the determination that she was qualified to appear on the ballot in the state court proceedings.

22-11299            Branch, J., Concurring                1

BRANCH, J., Concurring:

While this case is moot, I write separately because at the time Rep. Greene filed her federal lawsuit, she was entitled to a preliminary injunction.

## I.    Background

(a) *Legal Framework*

Under O.C.G.A. § 21-2-5 ("Challenge Statute"), an eligible voter may file a pre-election challenge to the qualifications of a candidate for state or federal office. Once a challenge is filed with the Secretary of State, the Secretary then notifies the candidate and refers the challenge to the Office of State Administrative Hearings ("OSAH") for a hearing by a state ALJ. § 21-2-5(b).

Upon referral from the Secretary of State, an ALJ must hold a hearing on the challenge and report his findings of fact and legal conclusions back to the Secretary of State. *Id.* After receiving the ALJ's report, the Secretary of State "shall determine if the candidate is qualified" to hold the relevant public office. § 21-2-5(c). The parties to the challenge—the voters or candidate—can seek judicial review of the Secretary's decision in the Superior Court of Fulton County. § 21-2-5(e). The superior court can affirm the decision, remand the case for further proceedings, or reverse or modify the decision. *Id.* The statute also provides for appellate review of the superior court decision "as provided by law." *Id.*

(b) *Voter Challenge to Rep. Greene's Eligibility*

Rep. Greene filed her candidacy for the upcoming election on March 7, 2022, and amended that filing three days later. On March 24, 2022, the Challengers filed an official challenge against Rep. Greene under the Challenge Statute. The challenge alleged that Rep. Greene "does not meet the federal constitutional requirements for a Member of the U.S. House of Representatives." The Challengers claimed that on the days surrounding January 6, 2021, Rep. Greene "aided and engaged in an insurrection to obstruct the peaceful transfer of presidential power, disqualifying her from serving as a Member of Congress under Section 3 of the 14th Amendment and rendering her ineligible under state and federal law to be a candidate for such office."

Secretary Raffensperger referred the challenge to the OSAH for a hearing before a state ALJ. The ALJ held a public hearing on April 22, 2022, during which Rep. Greene testified and was cross-examined by counsel for the Challengers.

However, on April 1, 2022, weeks before the scheduled OSAH hearing, Rep. Greene sued Secretary Raffensperger and the ALJ ("State Defendants"), along with two unnamed defendants, in the underlying federal action, filing a motion for a preliminary injunction and a verified complaint for declaratory relief, which alleged that the Challenge Statute was unconstitutional under 42 U.S.C. § 1983. Rep. Greene asserted claims under the First and Fourteenth Amendments (Counts I and II), Article I, § 5 of the

22-11299               Branch, J., Concurring                3

United States Constitution (Count III), and the 1872 Amnesty Act (Count IV).

In Count I, Rep. Greene alleged that because the Challenge Statute can be triggered based only on a Challenger's "belief" that a candidate is not qualified to seek and hold "the public office for which he or she is offering," it violates her First Amendment right to run for political office. In Count II, she contended that the Challenge Statute violates the Fourteenth Amendment's Due Process Clause by placing the burden on the candidate to prove that she is qualified. In Count III, Rep. Greene alleged that the Challenge Statute violates Article I, § 5 of the U.S. Constitution because it permits the State to judge independently the qualifications of a candidate for the U.S. House of Representatives, exceeding the State's power to regulate election procedures and usurping the constitutional role of the U.S. House of Representatives as "the Judge of the Elections, Returns and Qualifications of its own Members." Finally, in Count IV, Rep. Greene asserted that the state proceedings violated the 1872 Amnesty Act, which she maintains removed the "disability" imposed by § 3 of the Fourteenth Amendment prospectively to all future members of Congress.[1]

---

[1] The 1872 Amnesty Act provides:

> [A]ll political disabilities imposed by the third section of the fourteenth article of amendments of the Constitution of the United States are hereby removed from all persons

A few days after Rep. Greene filed her complaint against the State Defendants in district court, the Challengers moved to intervene. The district court granted their motion several days later.

On April 8, 2022, the district court heard oral argument from Rep. Greene, the State Defendants, and the Challenger-intervenors. On April 18, four days before the OSAH hearing on the candidacy challenge, the district court issued an order denying Rep. Greene's motion for preliminary injunctive relief, finding that she failed to show a substantial likelihood of success on the merits on any of her constitutional or statutory challenges because, in part, Rep. Greene failed to "cite persuasive legal authority or even include a developed legal argument" that Georgia lacks the authority to enforce "an existing constitutional provision." The district court declined to address the other injunction factors. Rep. Greene timely appealed the district court's ruling to this Court.

Soon after, on April 22, the state ALJ held a hearing on the challenge to Rep. Greene's candidacy qualifications. The ALJ then issued a decision, concluding that the "evidence in this matter is insufficient to establish that Rep. Greene, having 'previously taken

whomsoever, except Senators and Representatives of the thirty-sixth and thirty-seventh Congresses, officers in the judicial, military, and naval service of the United States, heads of departments, and foreign ministers of the United States.

Act of May 22, 1872, ch. 193, 17 Stat. 142 (1872).

22-11299                 Branch, J., Concurring                    5

an oath as a member of Congress . . . to support the Constitution of the United States . . . engaged in insurrection or rebellion against the same, or [gave] aid or comfort to the enemies thereof' under the [Fourteenth] Amendment to the Constitution" and holding that Rep. Greene "is qualified to be a candidate for Representative for Georgia's 14th Congressional District."[2]    Secretary Raffensperger subsequently adopted the ALJ's findings of law and fact.

On July 25, 2022, while this appeal was pending, the Superior Court of Fulton County affirmed Secretary Raffensperger's decision,[3] and the Supreme Court of Georgia denied the Challengers' application for discretionary review of the superior court's decision on September 1, 2022.

## II.    Standard of Review

This Court reviews a district court's denial of a preliminary injunction for abuse of discretion and its conclusions of law *de novo. LaCroix v. Town of Fort Myers Beach, Fla.*, 38 F.4th 941, 946 (11th Cir. 2022).

---

[2] Although Rep. Greene raised constitutional arguments against the state proceeding itself, the ALJ did not address them.

[3] The Superior Court of Fulton County similarly declined to address Rep. Greene's arguments about the unconstitutionality of the state proceeding.

### III.    Analysis

I conclude that the district court erred in denying Rep. Greene preliminary injunctive relief.

To obtain a preliminary injunction, Rep. Greene had to show: (1) a substantial likelihood of success on the merits; (2) that if relief is not granted, she will suffer irreparable injury; (3) that the threatened injury outweighs the harm the injunction would cause the opposing party; and (4) that the injunction is not adverse to the public interest. *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1268 (11th Cir. 2006). The district court decided this case on the first factor—concluding that Rep. Greene could not show a substantial likelihood of success on the merits because, among other reasons, she failed to convince the district court that the State lacked authority to enforce an "existing disqualification within the text of the Constitution." It did not reach the remaining injunctive relief factors.

On appeal, Rep. Greene asserts that the district court erred because the Challenge Statute is unconstitutional both facially and as applied to her because the State is exceeding its power to regulate the time, place, and manner of elections and usurping the U.S. House's role, as provided in Article I, § 5 of the U.S. Constitution, as the final arbiter of the qualifications of its members. The State Defendants respond that the Georgia challenge process is constitutional under the State's authority to regulate the time, place, and manner of elections under Article I, § 4 of the U.S. Constitution. And the Challengers assert that the

State is merely enforcing an existing constitutional qualification—*i.e.,* § 3 of the Fourteenth Amendment to the U.S. Constitution.

I start with the first factor—whether Rep. Greene has shown a substantial likelihood of success on the merits. Before the district court, she did.

The Constitution divides authority to regulate congressional elections between the states and the federal government. Article I, § 2 of the U.S. Constitution sets forth the qualifications for anyone wanting to serve in the U.S. House: "[n]o Person shall be a Representative who shall not have attained to the Age of twenty five Years, and been seven Years a Citizen of the United States, and who shall not, when elected, be an Inhabitant of that State in which he shall be chosen." U.S. Const. art. I, § 2, cl. 2. Article I, § 5, in turn, specifies that Congress judges whether a person satisfies those qualifications: "Each House shall be the Judge of the Elections, Returns and Qualifications of its own Members." U.S. Const. art. I, § 5, cl. 1. Meanwhile, the Constitution empowers the states to regulate the "Times, Places and Manner of holding Elections" for the U.S. House and Senate. U.S. Const. art. I, § 4 ("Elections Clause"). But as the Supreme Court explained in *U.S. Term Limits, Inc. v. Thornton*, the states' power to regulate the "Times, Places and Manner of holding Elections" does not include the power to add to the existing constitutional qualifications for congressional office. 514 U.S. 779, 783–827 (1995). When states

add qualifications, they exceed their authority under Article I, § 4.[4]
*Id.*

Underlying the challenge to Rep. Greene's candidacy under Georgia law, § 3 of the Fourteenth Amendment to the U.S. Constitution—which was ratified in 1868, three years after the Civil War—provides:

> No person shall be a Senator or Representative in Congress, or elector of President and Vice President, or hold any office, civil or military, under the United States, or under any State, who, having previously taken an oath, as a member of Congress, or as an officer of the United States, or as a member of any State legislature, or as an executive or judicial officer of any State, to support the Constitution of the United States, shall have engaged in insurrection or rebellion against the same, or given aid or comfort to the

---

[4] The Supreme Court in *Term Limits* invalidated an Arkansas constitutional amendment barring three-term representatives from appearing on the ballot. 514 U.S. at 828–38. The Arkansas Attorney General argued that the term limit amendment was not a legal bar on service in Congress because it did not preclude incumbents from running as write-in candidates, and was therefore not an additional qualification but a permissible ballot access regulation. *Id.* at 828. The Supreme Court rejected this argument. Declining to provide a comprehensive definition of "qualifications," the Court held that the term-limit amendment was an "indirect attempt to accomplish what the Constitution prohibits Arkansas from accomplishing directly" and that such "an amendment with the avowed purpose and obvious effect of evading the requirements of the Qualifications Clauses by handicapping a class of candidates cannot stand." *Id.* at 829, 831.

enemies thereof.  But Congress may by a vote of two-thirds of each House, remove such disability.

U.S. Const. amend. XIV, § 3.

In essence, the parties were asking the district court to determine whether the State of Georgia can keep a candidate for U.S. House off the ballot pursuant to § 3 of the Fourteenth Amendment to the U.S. Constitution if it determines the candidate "having previously taken an oath . . . to support the Constitution of the United States . . . engaged in insurrection or rebellion against the" United States.  The district court determined that the State could do so, explaining that § 3 is "an existing provision enshrined in the Fourteenth Amendment" and that the Challenge Statute's process enforces a "legitimate interest . . . to ensure that candidates meet the threshold requirements for office and will therefore not be subsequently disqualified, thereby causing the need for new elections."  The district court erred in reaching that conclusion.

Although no case comprehensively delineates between a state's permissible election regulation and an impermissible qualification, the Supreme Court has provided some guidance.  In *Term Limits*, the Court explained that states are "entitled to adopt generally applicable and evenhanded restrictions that protect the integrity and reliability of the electoral process itself" and that it had upheld election regulations that "regulated election *procedures* and did not even arguably impose any substantive qualification rendering a class of potential candidates ineligible for ballot position."  514 U.S. at 834–35 (quotations omitted); *see also*

*Storer v. Brown*, 415 U.S. 724, 733–35, 746 n.16 (1974) (rejecting a challenge to a California Elections Code requirement that independent candidates not be affiliated with a political party one year before the primary, reasoning that it was "expressive of a general state policy aimed at maintaining the integrity of the various routes to the ballot" and was no more an additional qualification for office than requiring a candidate to "win the primary to secure a place on the general election ballot or otherwise demonstrate substantial community support"); *Cartwright v. Barnes*, 304 F.3d 1138, 1139 (11th Cir. 2002) (upholding Georgia's requirement that a candidate obtain the signatures of 5% of registered voters as an election procedure, not a qualification, and explaining that states may enact rules "merely regulat[ing] the manner of holding elections" but they may not "impose[] [a] substantive qualification on a class of potential candidates for office"). So the states can regulate election procedures, but when they impose a "substantive qualification rendering a class of potential candidates ineligible for ballot position," they exceed their authority under Article I, § 4.

Turning to this case, in purporting to assess Rep. Greene's eligibility under the rubric of § 3 of the Fourteenth Amendment to the U.S. Constitution, Georgia imposed a substantive qualification on her. The State was not merely, as the district court incorrectly concluded, enforcing the preexisting constitutional disability in § 3. Instead, the State Defendants, acting under the Challenge Statute, forced Rep. Greene to defend her eligibility under § 3 to even

appear on the ballot pursuant to a voter challenge to her candidacy—thereby imposing a qualification for office that conflicts with the constitutional mechanism contained in § 3.[5] In other words, by requiring Rep. Greene to adjudicate her eligibility under § 3 to run for office through a state administrative process without a chance of congressional override, the State imposed a qualification in direct conflict with the procedure in § 3—which provides a prohibition on being a Representative and an escape hatch.[6]

In so doing, the State exceeded its authority under Article I, § 4 and invaded Congress's role to judge its members' qualifications under Article I, § 5. "[T]he Framers understood the Elections Clause as a grant of authority to issue *procedural regulations*, and not as a source of power to dictate electoral outcomes, to favor or disfavor a class of candidates, or to evade important constitutional restraints." *Term Limits*, 514 U.S. at 833–

---

[5] The Court in *Term Limits* declined to address whether § 3 of the Fourteenth Amendment constituted a "qualification" for office or whether the qualifications enumerated in Article I, § 2 were exclusive, explaining that "[b]ecause those additional provisions are part of the text of the Constitution, they have little bearing on whether . . . the States may add qualifications to those that appear in the Constitution." 514 U.S. at 787 n.2. I similarly offer no analysis on whether § 3 constitutes a qualification.

[6] Critically, an individual who would otherwise be barred by § 3 may still hold office if Congress removes § 3's disability by a vote of two-thirds of each House. U.S. Const. amend. XIV, § 3 ("But Congress may by a vote of two-thirds of each House, remove such disability.").

34 (emphasis added). The Supreme Court has distinguished between impermissible substantive qualifications that could handicap a class of candidates and permissible procedural regulations that, for example, "demonstrate substantial community support." *Cartwright*, 304 F.3d at 1143–44 (quotations omitted) (emphasis removed). The State's application of the Challenge Statute to Rep. Greene to determine her eligibility to appear on the ballot—which was far from a "generally applicable and evenhanded" procedural determination and was untethered from any community support in the electoral process—falls in the first category. *Term Limits*, 514 U.S. at 834–35 (explaining that Supreme Court decisions upholding election procedures "did not involve measures that exclude candidates from the ballot without reference to the candidates' support in the electoral process"); *see also Cartwright*, 304 F.3d at 1144 (distinguishing between unconstitutional substantive qualifications and permissible election procedures that require candidates to show a threshold of community or voter support to maintain the integrity and regularity of the electoral process). In sum, rather than merely imposing an election procedure, the State's pre-election adjudication under the Challenge Statute was an "effort to dress eligibility to stand for Congress in ballot access clothing." *Term Limits*, 514 U.S. at 829 (quotations omitted). Accordingly, at the time of her hearing before the district court, Rep. Greene had shown a substantial likelihood of success on the merits.

Turning to the next factor, in her motion for a preliminary injunction, Rep. Greene argued that she would be irreparably harmed by the unconstitutional enforcement of the Challenge Statute—which would violate her constitutional rights—and, if the challenge succeeded, would prevent her from running for Congress.

Rep. Greene satisfied this factor when she filed her federal complaint and motion for preliminary relief on April 1, 2022. At that time, the administrative hearing was still three weeks away. Indeed, when the district court issued its decision denying Rep. Greene a preliminary injunction on April 18, the hearing before the ALJ was still four days away. Before the hearing took place, Rep. Greene surely faced a risk of irreparable harm in having to defend herself in proceedings that carried the risk that the State Defendants would act outside the Constitution and strike her from the ballot, purportedly under § 3 of the Fourteenth Amendment. Given the timing of the federal litigation, the district court was well-positioned to obviate the risk of harm faced by Rep. Greene by issuing a preliminary injunction.

Turning to the last two factors, Rep. Greene was also required to show that the threatened injury outweighed the harm that the injunction would cause the opposing party and that the injunction was not adverse to the public interest. *KH Outdoor*, 458 F.3d at 1268. At the time of her district court proceedings, she satisfied both. Because the enforcement of § 3 of the Fourteenth Amendment through the Challenge Statute to Rep. Greene is

unconstitutional, enjoining such enforcement would not have been adverse to the public interest.  The public "has no interest in enforcing an unconstitutional law." *Scott v. Roberts*, 612 F.3d 1279, 1297 (11th Cir. 2010).  And the equities did not favor thwarting the will of the voters through an unconstitutional proceeding.

Accordingly, because Rep. Greene met her burden on all four factors during her district court proceedings, she was entitled to preliminary injunctive relief, and the district court erred by concluding otherwise.